JOSEPH H. EXTON AND FANNY P. EXTON, HIS WIFE, v. THE CENTRAL RAILROAD COMPANY OF NEW JERSEY.

Argued February 21, 1898—Decided June 13, 1898.

1. When a person purchases a ticket at the station or depot of a railroad company, intending to be a passenger on the cars of the company, the relation of common carrier and passenger is established, and the company is required to exercise reasonable care to protect the passenger from injury in the use of the station or depot for the purposes of the journey, and if the passenger uses the usual ways and passages for the purpose of obtaining checks for baggage, and is injured by any dangers existing in or on such ways and passages, which are known or ought to be known to the servants of the railroad company having charge of such station or depot, or which could have been reasonably anticipated by them, and reasonable care has not been exercised to protect the passenger from such dangers, liability exists on the part of the defendant company to respond in damages for such injury.

2. The company is liable for injuries so caused, even if the dangers arose from the acts and conduct of intruders or strangers, if such acts and conduct were so continued, and so notorious, that the servants of the defendant company in charge of the depot and the passageways thereof, devoted to the use of passengers, knew of such acts and conduct, or should have known of them and of the dangers arising therefrom.

3. The questions whether dangers exist, and whether they were habitual and notorious, and whether the company had knowledge of them, or should have had such knowledge, where the evidence is in dispute, are questions which must be submitted to the jury for their determination.

4. A passenger has the right to assume that the usual passage leading from the ticket office of a railroad station to the baggage-room is safe for use for the purpose of obtaining baggage to be checked, and the use of it cannot be contributory negligence, merely because there was another way which might have been used without injury, when the dangers of the used passageway were not perceivable or avoidable by the passenger in the exercise of ordinary care in the use of the depot and passageway, for the purposes of the journey to be undertaken, and the question whether such care has been exercised where two opposite inferences can be reasonably drawn from the evidence in this respect, is for the jury to determine.

5. Where a passenger, in attempting to have her baggage checked, was knocked down and injured on a passageway leading from the ticket

office or waiting-room in a railroad depot, to the baggage-room therein, by cabmen on the same, awaiting incoming trains, for the purpose of soliciting passengers in their cabs, and which cabmen were not in any sense the servants of the railroad company, the injury being caused by the cabmen being engaged in sport, in scuffling on the passageway, and coming violently in contact with the passenger and injuring her, and the passageway being under the control of, and part of the depot of, the railroad company—*Held,* that evidence of similar occurrences, to the annoyance and injury of passengers previous to the time of the accident in question, was admissible to show the dangers to passengers, existing there, and also as tending to show that the servants of the railroad company in charge of the depot had, or ought to have had, knowledge of such dangers. *Held, also,* that the railroad company was bound to exercise reasonable care to protect its passengers from injury from such dangers, and that a neglect of the servants of the railroad company to exercise such care, resulting in injury to its passengers, established liability to respond in damages.

On rule to show cause why the verdict should not be set aside.

Before Justices LIPPINCOTT, GUMMERE and LUDLOW.

For the plaintiffs, *Paul A. Queen* and *H. Burdett Herr.*

For the defendant, *George H. Large* and *John L. Conover.*

The opinion of the court was delivered by

LIPPINCOTT, J.   This is an action by Joseph H. Exton and Fanny P. Exton, his wife, against the Central Railroad Company of New Jersey, to recover damages for personal injuries to Mrs. Exton and resulting damages to her husband. The declaration contains two counts, one averring damages to the wife for her personal injuries and the other for resulting damages to her husband. The jury returned a verdict in favor of the plaintiffs, and awarded the sum of $500 damages to Mr. Exton and the sum of $1,750 to Mrs. Exton.

It was not contended upon the argument that the damages

were excessive. An examination of the evidence as to this question does not reveal any misapplication of the law by the jury in its award of damages. The facts of the case fully warrant the verdict as to the amounts awarded.

The only discussion is whether, upon the evidence in the cause, upon the application of proper principles of law, the jury could determine as they did, that liability of the defendant to respond in damages existed.

The undisputed facts are, that on November 23d, 1893, Mrs. Exton was on her way from Brooklyn, where she had been making a visit, to her home at High Bridge, in this state. She proceeded to the Central railroad depot or passenger station on West street, at the foot of Liberty street, in the city of New York. She entered the waiting-room in which the ticket office is located and purchased her ticket. The main waiting-room and entrance to the ferry across the Hudson river to the train in Jersey City lie farther inside. Her trunk was in the baggage-room, and after she had purchased her ticket she went out of one of the doors of this waiting-room upon the passageway to the baggage-room or the window thereof, in order to have her baggage checked. As she proceeded along this passageway, and when near the window of the baggage-room, she saw two men scuffling on or near the passageway; instantaneously she was run against or backed against by one of these men and knocked down and injured. She says at the moment she saw them she was knocked down and injured, and in this assertion she is not contradicted. They were just inside an offset of the building, at the window or entrance to the baggage-room, and she was knocked down just as she turned the corner of this offset, and it was only at that moment that she saw the men. It appears from the evidence that the passageway is a board-walk or platform about four feet wide; outside of this is also a stonewalk three feet wide. This walk runs along in front of the passenger station, leading from the waiting-room or ticket office to the baggage-room, a little to the south of the waiting-room. The baggage-room sits a little back from

the outside line of the passenger station or waiting-room, and there a recess-angle or offset is created. It was just at this recess, near the window, that the scuffling of the men and the knocking down of Mrs. Exton took place. Over these spaces, in front and extending farther out, is a roof supported nearer the outward edge thereof by iron columns or supports.

There is no dispute in this case that this boardwalkway is usually used by passengers to get their baggage checked after the purchase of their tickets, or before they go to the inside or main waiting-room on their way to the ferryboats to cross the river. The evidence also shows that the maintenance and care of this walk belong to the defendant company as a part of its depot or station. The evidence also is undisputed that she was knocked down by reason of the scuffling of two hackmen on this walk. One of them stepped or jumped backwards whilst engaged in the scuffle and knocked her down. This was at or very near the angle of the walk at the baggage-room window or entrance.

The cabmen engaged in this scuffle were in no sense the servants or employes of the defendant. They were engaged in waiting for passengers and baggage from incoming trains for transportation to their destination in New York city or elsewhere.

Evidence was admitted by the trial justice, over objection by the defendant, that numerous cabmen and hackmen, including the two engaged in this scuffle, with the knowledge and permission of the officers and employes of the defendant, for a long time previously to the accident, perhaps ever since the erection of the ferry entrance or depot, had been in the habit of taking their stand near the entrance to the depot, upon these walks and under the space roofed, for the purposes of their trade in soliciting the carriage of passengers and baggage in their cabs and hacks. This evidence is undisputed.

Evidence was also admitted, over objection, and on the defence denied, that very frequently and covering considerable space of time previous to the occurrence of this accident these cabmen and hackmen, including the two engaged in this

scuffle on this walkway, had indulged in scuffling of a kindred character to that which caused the injury to Mrs. Exton. Many passengers had observed it on their way to the ferry entrance and to the baggage-room, and some passengers had been annoyed and incommoded, if not injured thereby. There is evidence in the case tending to show that the general passenger agent of the defendant had been notified by one or more of the passengers of this state of affairs, and that other of the employes of the defendant had actual knowledge of these occurrences.

This evidence was properly admitted to the jury, first, as tending to show the dangers connected with the use of this way to the baggage-room, of which Mrs. Exton could have no previous notice or knowledge, and of the character of the danger, it being such as that its existence could not be previously observed by any passenger in the use of the walk; and secondly, as tending to show that the servants of the defendant in charge of the station had knowledge of these occurrences and dangers on that walkway, or should have had knowledge of them, in the exercise of reasonable care, to guard its passengers against accidents and injury from situations of danger likely to arise whilst under its care. The evidence was admissible for the jury to reach a conclusion whether this scuffling, in short, was a danger to which passengers were subjected, of such frequent and notorious occurrence that a reasonable inference could be drawn that the defendant, through its employes in charge of the depot, did have, or should have had, knowledge of the dangers there existing, or should reasonably have anticipated them, and whether they were such that the defendant should guard against, and whether, in failing to do so, it was guilty of such negligence as rendered it liable to passengers injured thereby.

That this class of evidence is admissible cannot now be controverted. Evidence to show existing dangers, their continuance, their notoriety, and whether observable to the plaintiff or defendant, is admissible in the aspects which a

case of this character presents, both in reason and upon authority. Adjudicated cases are numerous, supporting the admissibility of this class of evidence. Whilst exceptions were taken and allowed to the admission of this evidence, its competency on the argument of this rule seemed to be conceded.

At the close of the evidence for the plaintiff a motion to nonsuit was made, on the grounds that the negligence of the defendant had not been established, and that Mrs. Exton, by the evidence, was guilty of contributory negligence. This motion was denied, and after evidence for the defence, the cause was submitted to the jury.

It is clear that, upon well-settled principles, the trial justice was right in denying this motion. Both questions were for the jury, *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton*, 26 *Vroom* 342, 345; *Goldsboro* v. *Central Railroad Co.*, 31 *Id.* 49; *New York and Greenwood Lake Railway Co.* v. *New Jersey Electric Railway Co.*, 31 *Id.* 52. The principle has been laid down so often as to make repetition needless. *Traction Co.* v. *Scott*, 29 *Id.* 682.

In this case it was conceded that the plankwalk in question was a part of the railroad station and provided for the use of the passengers of the company. It was constructed for this purpose and was under the exclusive control of the railroad company. No contention otherwise is made by the defendant. Every person who came upon it for the purpose of entry to the ferry-house or to check his or her baggage before entering the waiting-room to the ferryboats of the defendant to continue his or her journey, became a passenger and entitled as such to be protected from any danger of injury, so far as the defendant company could render protection by the exercise of that care required of them in the relation of common carrier and passenger. The plaintiff there on the boardwalk was as much a passenger as if she had been seated in the ferryboat or cars of the defendant company. It may be that the degree of the care required differed, depending upon the circumstances in which the plaintiff was placed, or it may

be that there was required of her a greater care of herself in order to free her from the charge of contributory negligence, but that the relation of common carrier and passenger. did exist cannot be disputed. *Patt. Ry. L.* 214; *Buffet* v. *Troy and Boston Railroad Co.*, 40 *N. Y.* 168; *Donovan* v. *Hartford Street Railway Co.*, 65 *Conn.* 201; *Gordon* v. *Grand Street, &c., Railroad Co.*, 40 *Barb.* 546; *Hansley* v. *Janesville, &c., Railroad Co.*, 115 *N. C.* 602; *Grimes* v. *Pennsylvania Railroad Co.*, 36 *Fed. Rep.* 72; *Norfolk, &c., Railroad Co.* v. *Galliher*, 89 *Va.* 639; *Allender* v. *Chicago, &c., Railroad Co.*, 37 *Iowa* 264; *Delaware, Lackawanna and Western Railroad Co.* v. *Trautwein*, 23 *Vroom* 169; *Pennsylvania Railroad Co.* v. *Price*, 95 *Pa. St.* 267; *McKernan* v. *Manhattan Railway Co.*, 54 *N. Y. Super. Ct.* 354; *Ray Negl. Imp. D.*, §§ 9, 10, and cases cited.

The walkway, therefore, being provided by the defendant company for the use of the traveling public for the purposes of travel on its ferryboats and railroad trains, the defendant company were bound to use reasonable care to keep it safe for the use of their passengers. It was one of the means which the plaintiff had the right to use for the purpose of getting her baggage checked and obtaining her checks therefor, preparatory to going across the ferry, or for any other lawful purpose connected with her journey, and she had the right to assume it was reasonably safe for her to use for any such purpose, and the company was bound to exercise reasonable care to render it suitably safe for her. *Delaware, Lackawanna and Western Railroad Co.* v. *Trautwein, supra.* The defendant company had the right to eject anyone creating disorders or disturbance there, or annoying the passengers, or engaging in such conduct as might injure them, and to take such measures in these respects as would render it safe. *Kalamazoo H. & B. Co.* v. *Sootsma*, 84 *Mich.* 194; *Ray Negl. Imp. D.*, §§ 32, 46, and cases cited.

It was proper to submit to the jury the question of the dangers of this way, and whether they were habitual, customary dangers which the defendant could reasonably anticipate

might exist, and whether they were such as required precautions against accident and injury to passengers therefrom, and whether the defendant had exercised the required degree of care and caution to protect its passengers from such dangers. If the defendant had notice or knowledge of what might happen in its depot, or could reasonably anticipate what might happen there dangerous to others lawfully there, it was bound to use care to avoid the injury which might be occasioned, and it would matter little whether the danger was habitually existing or might occur only at intervals. Nor can it matter but little whether the dangers arose from the acts of the servants and employes or others, so long as the dangers existing were not observable by the passenger so as to be avoided, and they were known to or ought to have been known to *the defendant*, or anticipated by the officers of the defendant company in charge of the station.

A railroad company is a common carrier, and owes to its passengers the duty of guarding them from assaults and insults from their fellow-passengers and strangers, when by a high degree of care the same might have been prevented. *Putnam* v. *Broadway Railroad Co.*, 55 *N. Y.* 108; *Holly* v. *Atlantic Street Railroad Co.*, 61 *Ga.* 215; *Hendricks* v. *Sixth Avenue Railroad Co.*, 12 *Jones & S.* 8.

This duty grows out of and is impliedly a part of the contract between the carrier and the passenger.

According to the uniform tendency of adjudications, which we admit as authorities, the carrier owes to the passenger the duty of protecting him from the violence and insults and assaults of his fellow-passengers or intruders, and will be held responsible for its own or its servants' neglect in this particular, when, by the exercise of proper care, the acts of violence might have been foreseen and prevented; and while not required to furnish watchmen or servants sufficient to overcome all force or negligence when unexpectedly happening, yet it is the duty to provide reasonable precautions to protect the passenger from assaults from any quarter at which they might reasonably be expected to occur under the circumstances of

the case and the condition of the parties. *New Orleans Railroad Co.* v. *Burke,* 53 *Miss.* 200; *Pittsburgh Railroad Co.* v. *Hinds,* 53 *Pa. St.* 512; *Flint* v. *Norwich Transportation Co.,* 34 *Conn.* 554. Carriers of passengers are bound to exercise the utmost care in maintaining order and guarding those they transport against violence from whatever source arising, which might be reasonably anticipated or naturally expected to occur. *Flint* v. *Norwich Transportation Co., supra.* The carrier must exercise the care required to protect the passenger from violence even by a stranger. *Sherley* v. *Billings,* 8 *Bush* 147; *Farber* v. *Missouri Passenger Railway Co.,* 116 *Mo.* 81; *Eads* v. *Metropolitan Street Railway Co.,* 43 *Mo. App.* 536. The carrier is bound to protect from the insults and wanton interference of strangers and fellow-passengers. *Winnegar's Administrator* v. *Central Passenger Railway Co.,* 34 *Am. & Eng. Cas.* 462, 85 *Ky.* 547; *Milwaukee M. R. Co.* v. *Finney,* 10 *Wis.* 388. The general rule is clear that from whatever source the danger may arise, if it be known or should have been known, care must be exercised to protect the passenger from that danger.

A nonsuit could not have been justified.

The evidence on the part of the defendant was confined principally to a denial that the occurrences of. scuffling between the cabmen at the ferry entrance and on this walkway to the baggage-room, previous to the time of this accident as detailed in the evidence on the part of the plaintiff, had ever occurred.

This raised a clear question of disputed fact for the jury to determine.

Evidence was also produced on the part of the defendant that the officers of the defendant company and the employes in charge of the ferry had never known of the previous happening of these occurrences on this walkway. This evidence also raised a question of fact for the jury, along with the other question of fact, whether, from the whole evidence in the case, such occurrences had ever happened, and if so, whether they were of the character as to affect the defendant

with notice or knowledge of them, and whether they presented a danger which it became the duty of the defendant to guard its passengers against.

The trial court would not have been justified in withdrawing these questions from the jury, and therefore the trial justice was correct in refusing to direct a verdict for the defendant.

The evidence in the case justified the verdict of the jury, and therefore the rule to show cause is discharged, with costs.