(33 Misc. Rep. 616.)

### HEGELEIN v. ANTHONY et al.

(Supreme Court, Trial Term, New York County. January 12, 1901.)

PATENTED CAMERA—LICENSE TO MANUFACTURE AND SELL—CONTRACT—CONSTRUCTION.

> Under a contract by a patentee of a camera licensing its manufacture and sale, the licensees agreed to pay 50 cents on each sold; and it was agreed that, if they did not pay the royalty on at least 1,000 within one year, it was to be optional with the licensor to annul the license by written notice,—the licensees in that event to have the privilege of selling such cameras and plate holders as might be manufactured or in process at that time, paying the same royalty on each. In the event that the licensees paid royalties on 1,000 cameras, the license was to continue for another year, but the licensor in that case was to receive royalties on not less than 5,000 cameras the second year. *Held*, that the licensees, not having sold 1,000 cameras during the first year, were bound to pay only 50 cents on each actually sold thereafter; the licensor not having given notice of annulment.

Action by John C. Hegelein against E. & H. T. Anthony & Co. Motion to dismiss the complaint. Granted.

Harry E. Knight (David J. Newland, of counsel), for plaintiff.
Merrill & Rogers (Payson Merrill, of counsel), for defendants.

GIEGERICH, J. The action is to recover the sum of $2,500, less $6 admitted to have been paid on account, alleged to be due under the terms of a written contract, by which the plaintiff licensed the defendants to make and sell a patented pocket camera. The contract in question was made on the 1st day of June, 1895, and, after reciting the obtaining of the letters patent on the invention, the occupation of the defendants, and the desire of the plaintiff to license the defendants to manufacture and sell under the patent, proceeds to confer upon the defendants the sole and exclusive license to manufacture and sell the cameras, and binds the plaintiff to defend and hold harmless the defendants against any actions for infringement, and also makes the usual provision in such cases requiring the licensee to keep account of the goods made and sold under the license, and to render periodical statements thereof. The seventh paragraph of the contract is as follows:

"The party of the second part agrees to pay to the party of the first part a royalty of 50 cents on each pocket camera sold by them, and to advertise

and push the sale of these cameras at their own expense in their Photographic Bulletin and Revista Cientifica. Any other advertising, however, to be entirely at the option of the party of the second part."

The eighth paragraph deals with the keeping of accounts and rendering of statements and other similar matters already referred to. The ninth paragraph is as follows:

"It is mutually understood and agreed that if the party of the second part does not pay the royalty on at least 1,000 of these cameras within one year from July 15, 1895, the party of the first part may, at his option, annul this license by serving a written notice to that effect on the party of the second part; but the party of the second part is to have the privilege in that event of selling such pocket cameras and their plate holders as may be manufactured or in process at the time of said cancellation, paying, however, the same royalty, namely, 50 cents, on each camera."

There are two other paragraphs, which are unnecessary to be quoted, however, as they do not affect the present controversy.

The case was tried without a jury and it is conceded by both sides that the only question presented concerns the construction of the contract. But little was done under the license during the first year, and royalties on 1,000 of the cameras were not paid within that year. Nevertheless the plaintiff did not exercise the option reserved to him in the contract of annulling the license. During the second year 12 instruments were sold. Numerous letters exchanged between the parties have been put in evidence, but I do not perceive that they have any bearing on the point in dispute; nor do the counsel, in the briefs submitted, point out in what aspect they are deemed material. The case, therefore, is resolved, as I have said, into a question of law, and concerns the proper interpretation of the provisions of the contract above quoted; the plaintiff contending that, under the circumstances above stated, the defendant was bound to pay $2,500 in royalties the second year, while the defendant contends that it was bound to pay only 50 cents on each instrument sold, and that, having sold but 12, it discharged its entire obligation to the plaintiff when it sent him the check for $6. The general and basic provision of the contract in question is found at the beginning of the seventh paragraph, and is as follows:

"The party of the second part agrees to pay to the party of the first part a royalty of 50 cents on each pocket camera sold by them."

Any obligation of the defendant or right of the plaintiff in addition to this is special, and must be expressed in other and special language; and in whatever situation the parties find themselves, unless there is some such special provision made and applicable to that situation, their rights and duties are fixed by this general and fundamental provision just quoted.

Passing now to the further terms of the contract, it is found that the ninth and tenth paragraphs confer, in certain contingencies, the right to the plaintiff to terminate the license, or to the defendant to insist on its continuance, and at the same time give compensating rights to the other party. In the contingency that the defendant does not pay royalty on at least 1,000 cameras within a year, the plaintiff is given the option to annul the license; but the defendant is

protected by giving it the right, on payment of the same royalty, to sell all instruments completed or in process. Next, and in the tenth paragraph, follows a provision that, in the event that the defendant pays royalties on 1,000 instruments, the license shall continue for another year; that is to say, the plaintiff shall have no right to annul it for that year. But here again a compensating provision is made, and this time in favor of the plaintiff,—that he shall receive royalties on not less than 5,000 cameras that year. It is thus seen that the contract was carefully drawn, and safeguards the interests of the parties (the one against the other) in the various contingencies mentioned. It must be observed, however,—and in this lies the controlling point of the case,—that all contingencies are not covered. The ninth paragraph prescribes a method of terminating the license, depending on two conditions: (1) that the defendant pay royalties on less than 1,000 cameras for the year; and (2) that the plaintiff elect to revoke the license, and so give notice. What happens in the event of the first condition without the second is not declared, and it is precisely this event that has occurred, viz. the defendant paid royalties on less than 1,000 cameras, and the plaintiff did not give notice annulling the license. I am unable to discover any special provisions applicable to this situation, and must, therefore, reverting to the fundamental provision first pointed out, hold that the rights of the parties are governed by that, viz. the plaintiff is entitled to demand and the defendant bound to pay 50 cents for each camera sold. The plaintiff's counsel insists that the case falls within the provisions of the tenth paragraph, but I cannot so regard it. As above shown, that paragraph prescribes a method of continuing the license, but only in a certain manner, viz. by the defendant paying royalties on at least 1,000 cameras. Such payment would give the defendant the exclusive right to continue making and selling the instruments another year, no matter how unwilling the plaintiff might be, or how remiss the defendant might be in pushing the sales. But, to prevent any neglect or unfair treatment of the invention or any injury to the plaintiff's rights, there is a countervailing provision that royalties shall be paid on not less than 5,000 cameras. If such payment were not made, however, the defendant could not insist on continuing in control of the invention, but the plaintiff could himself resume such control, on notice to that effect. There was not, consequently, in such a case, the same necessity or reason for providing against the defendant's neglecting or purposely suppressing the invention; and, in my view of the reasonable construction of the contract, the parties did not make such provision. The motion to dismiss the complaint is therefore granted.

Complaint dismissed.