CLEMENT FALZARANO, PLAINTIFF-RESPONDENT, v. DEL-
AWARE, LACKAWANNA AND WESTERN RAILROAD
COMPANY, DEFENDANT-APPELLANT.

Argued May 19, 1937—Decided September 22, 1937.

For the defendant-appellant, *Frederick B. Scott* (*John L. Ridley,* of counsel).

For the plaintiff-respondent, *David T. Wilentz.*

The opinion of the court was delivered by

WELLS, J. This is an appeal from a judgment entered in the Supreme Court at the Union Circuit in favor of the plaintiff-respondent against the defendant-appellant for personal injuries inflicted upon the plaintiff while a passenger on defendant's train by a drunken negro fellow passenger.

The suit was originally brought against the defendant railroad company, its conductor, O'Donnell, its ticket-collector, Mason, and its engineer, Dunham, all of whom were members of the crew of the train on which the shooting occurred, and Richardson, the negro passenger, who did the shooting.

At the trial, a voluntary nonsuit was entered in favor of the defendant Dunham.

The defendant Richardson filed no answer and the case proceeded only as against the defendant railroad company and defendants O'Donnell and Mason. At the conclusion of the plaintiff's case a nonsuit was entered in favor of the defendants O'Donnell and Mason.

The jury rendered a verdict in favor of the plaintiff against the defendant railroad company in the sum of $22,000, which on a rule to show cause was reduced to $10,000, for which amount the judgment appealed from was, by consent of plaintiff, entered.

Sometime after the entry of this judgment the defendant railroad company obtained a second rule to show cause to set aside the verdict on the ground that there had been turned over to the jury, and that the jury had in its possession during its deliberations, written statements of the defendants O'Donnell and Mason. These statements had been admitted in evidence as against these two defendants respectively but had been excluded as evidence against the defendant railroad

company as not binding on it, and the judge had expressly so charged the jury.

Depositions taken on the second rule to show cause indicated that four of the jurors saw the two statements in the jury room and that one or more of them read or glanced over at least one of the statements, and that both of them were read by one of the jurors; that the jurors understood when the statements were admitted in evidence that they were to be considered only as against Mason and O'Donnell, who made them, and not against the railroad company, and that after the nonsuits were entered as to Mason and O'Donnell, the jury undertsood that these statements were "out of the case."

After the trial court had considered these depositions and the argument of counsel, he made an order dismissing the second rule to show cause.

The first point argued by appellant as a ground of appeal is that this action of the trial court constituted an abuse of discretion on his part.

"The general rule is that where a paper which should not properly be with the jury during their deliberations has been sent to the jury room through inadvertence or accident, and not through the connivance or design of the prevailing party, the verdict will not generally be set aside on that account if it does not appear that the paper was of a character to prejudice the unsuccessful party or that other circumstances rendered the reading harmful." 16 *R. C. L.* 302. This rule seems to have been applied in this state and is in harmony with the purpose of section 27 of the Practice act and section 136 of the Criminal Procedure act invoked by the Supreme Court in *State* v. *Kysilka,* 84 *N. J. L.* 6, where, in a prosecution for murder certain testimony taken at the coroner's inquest improperly found its way into the jury room, but the Supreme Court, finding nothing which could have had any influence upon the minds of the jury in arriving at their verdict that was not laid before that body during the trial in the shape of oral testimony from the mouths of the same witnesses who gave evidence at the inquest, refused to set aside the conviction upon this ground.

In the instant case there is no suggestion that the plaintiff or his counsel had anything to do with these statements going with the other exhibits to the jury room. They were there through inadvertence or accident.

The undisputed fact is that these statements had been read in full to the jury when they were properly a part of the case. Moreover, the depositions taken and presented by the defendant upon the rule to show cause prove that the statements had no effect whatever upon the jury's deliberations and their verdict.

We therefore conclude that there was no abuse of discretion on the part of the trial court in its refusal to set aside the verdict on the ground of an irregularity which was not shown to have prejudiced the defendant.

The second point argued by appellant railroad company for reversal is that the trial court erred in refusing to direct a verdict in its favor, in that no negligence was established on its part which was the proximate cause of the happening on which plaintiff based his cause of action.

The rule of law applicable to the duty of a railroad to protect its passengers against assaults from fellow passengers is well settled in this state.

"A railroad company is a common carrier, and owes to its passengers the duty of guarding them from assaults and insults from their fellow passengers and strangers when, from a high degree of care, the same might have been prevented. * * * Carriers of passengers are bound to exercise the utmost care in maintaining order and guarding those they transport against violence, from whatever source arising, which might be reasonably anticipated or naturally expected to occur." * * * *Exton* v. *Central Railroad Co.*, 62 *N. J. L.* 7; 42 *Atl. Rep.* 486; *affirmed,* 63 *N. J. L.* 356; 46 *Atl. Rep.* 1099; *Frazier* v. *Public Service Railway Co.*, 97 *N. J. L.* 37; *affirmed,* 99 *Id.* 501.

The contention of the railroad company is that there was no evidence indicating that its agents and servants could have reasonably anticipated the assault upon the plaintiff and therefore it could not be held liable.

With this we do not agree. The plaintiff got on the train as a passenger at Stirling, New Jersey, to go to Newark, and occupied the last seat in the smoking car facing the front of the car. The negro, Richardson, boarded the train at Summit, at about ten-fifty-nine P. M. There was testimony that he was manifestly drunk and that as he staggered onto the train, the ticket-collector said to him, "how are you tonight?" and he replied, "I am all right, but they got my watch but I got my gun;" that for two minutes or more before the train left the station, Richardson talked in a loud voice to the ticket-collector on the front platform of the rear car and was making a "nuisance of himself;" that he entered the rear car from the front and proceeded down the aisle; that the conductor, who was sitting in the rear of the last car, had noticed Richardson on the station platform before he got on the train, and when Richardson entered the car the conductor had seen him point at one of the passengers and heard him say, "they got my watch up in Summit, now you shell it out;" that the conductor met Richardson in the aisle about midway of the car and asked him where he was going and upon receiving an incoherent reply, left him and went into another car. The conductor, who was called as a witness for the plaintiff, admitted that Richardson's conduct was such that he was afraid of a hold-up. In spite of that he walked away from Richardson and went forward to tell the engineer about it. He didn't come back before the shooting. After the conductor passed him by, Richardson continued to sway down the aisle from seat to seat using loud, profane and offensive language, accusing different passengers of stealing his watch and threatening them with physical violence, and, following him at a distance of about four feet, was the ticket-collector taking up tickets. Richardson finally grabbed by the shoulder a passenger, who was sitting with his back to him, in the rear of the car opposite to and facing the plaintiff, and demanded from this passenger his (Richardson's) watch and when the passenger told him he didn't have his watch and to go away, Richardson cursed him and muttered that if he didn't produce the watch he would show him something he had never seen be-

fore, and going back a few steps toward the front of the car, Richardson took off his overcoat, pulled a revolver out of his pocket and returning to the rear of the car, deliberately shot at this passenger, the bullet striking the plaintiff, who, up to this point, had no words or dealings of any kind with Richardson.

The testimony is that it was less than two minutes from the time Richardson left the train platform, where for another two minutes he had been making an exhibition of himself in the presence of the ticket-collector, to the time when he shot the plaintiff.

Appellant contends that because only about four minutes intervened between the time Richardson got on the train and the time of the shooting, the train crew did not have sufficient time to know he was likely to commit an assault and to prevent him from doing so.

The uncontradicted evidence is that all the time Richardson was inside the car cursing and threatening and assaulting passengers, and giving every indication of a cantankerous drunken man on a rampage, the ticket-collector and two other employes of the defendant company (not to mention the conductor) were in a position to see what was going on and to prevent it, and yet none of them said or did anything to stop Richardson from accosting and threatening passengers, which the testimony indicated they must have seen.

There was other testimony, admitted over defendant's objection, as to the conduct of Richardson at the defendant's railroad station at Summit between nine-fifteen P. M. and eleven P. M., while he was waiting for the train. The admission of this testimony is the subject-matter of the third and last point argued for reversal by counsel for appellant, who contends that it was incompetent, irrelevant and immaterial.

It is closely related to and may be considered with the appellant's second point. This testimony, which is not denied, was that during all this period of time Richardson was staggering around the railroad station in an obviously intoxicated and dangerous condition, cursing, and assaulting persons within the station, and exhibiting from time to time a revolver, which he carried in a black valise.

Appellant says that the testimony as to what transpired at the station was improperly admitted because there was nothing to indicate that the ticket agent (who was inside the ticket office window during all this time) heard the noise or knew that Richardson had a gun, and that he was a prospective passenger; and that the action and language of Richardson, being out of earshot and eyesight of the ticket agent, could not be notice to the defendant railroad company of Richardson's condition and conduct.

While there is no direct testimony that the ticket agent, who kept the office window closed, saw or heard Richardson, yet he was admittedly within hearing of the noise, which was so loud that it could be heard all over the station and even outside. At one time Richardson knocked on the ticket office window demanding that the agent sell him a ticket and walked up and down the station cursing the ticket agent because he wouldn't open the window to sell him a ticket. The agent came out of his office once but at no time did he say or do anything about it. While the ticket agent testified that he did not see nor have any conversation with Richardson that evening, he did not say that he didn't hear the noise and threats or know what was going on inside the station. The station was defendant's property and was in charge of the ticket agent.

We think that the testimony as to what took place in the station was properly admitted for the purpose of proving that the ticket agent knew or should have known that Richardson was drunk, quarrelsome and in a dangerous condition, that he was intending to board the train in question, and this constituted notice to the defendant of the situation and was sufficient to put it on its guard.

Whether a carrier has notice of the danger from which one of its passengers ultimately suffers injury and has made reasonable efforts to prevent is for the jury to decide. *Exton* v. *Central Railroad Co., supra; Skillen* v. *West Jersey and Seashore Railroad Co.,* 96 *N. J. L.* 492.

The jury might reasonably have found (as they evidently did) that the railroad employes should have anticipated, by

the exercise of due care, that a brawling drunken negro was an undesirable and objectionable passenger to ride on its train. Furthermore, having once been admitted to the train, it was not only the right of the conductor and the other members of the train crew to have ejected Richardson when they became apprehensive that he was liable to stage a hold-up and had a gun, but it was for the jury to determine whether it was the duty of the employes of the defendant to have ejected him from the train before he committed an assault, and, if that was not possible under the circumstances, to find that the employes failed in their duty to keep him away from fellow passengers whom he was approaching and threatening. *Frazier* v. *Public Service Railway Co., supra.*

Finding no error in the record, the judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD. PARKER, LLOYD, DONGES, PERSKIE, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 12.

*For reversal*—CASE, HEHER, JJ. 2.