84 N.J. Super. 411 (1964)
202 A.2d 439
WILLIAM MAYER, AN INFANT, BY HIS GUARDIAN AD LITEM, JAMES MAYER AND JAMES MAYER, INDIVIDUALLY, PLAINTIFFS-RESPONDENTS,
v.
HOUSING AUTHORITY OF THE CITY OF JERSEY CITY, A BODY CORPORATE AND POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 16, 1964.
Decided June 30, 1964.
*414 Before Judges GAULKIN, LEWIS and LABRECQUE.
Mr. Robert E. Tarleton argued the cause for the appellant (Messrs. Beggans & Keale, attorneys).
*415 Mrs. Janet W. Freeman argued the cause for the respondents (Mr. Fred Freeman, attorney).
The opinion of the court was delivered by LABRECQUE, J.S.C. (temporarily assigned).
This is an appeal from a judgment based upon a jury verdict entered in the Law Division in favor of the plaintiffs and from an order denying defendant's motion for judgment notwithstanding the verdict.
Defendant Housing Authority of the City of Jersey City, hereinafter referred to as the Authority, owns and operates Currie Woods Gardens, a housing project in the City of Jersey City. The parents of the infant plaintiff were tenants in the project and, at the time of the accident, had been residing there for a period of approximately 1 1/2 years. The project consisted of seven buildings housing 711 families having between 1,200 and 1,300 resident children under the age of 18 years. It contained certain play areas, the one here involved consisting of a paved area near its center, a portion of which was marked out and used as a baseball diamond.
On April 4, 1961, at approximately 1:30 P.M., the infant plaintiff William was playing baseball with a group of about ten boys. Approximately 100 to 150 children were in the general area at the time. They had been playing for over an hour, and one of them had just finished his turn at bat when the infant plaintiff walked over and bent down to retrieve a bat which was lying between home plate and first base. At this time the baseball was somewhere in center field, to which it had been hit by the previous batter. As plaintiff was straightening up from retrieving the bat, something hit him in the left eye. The impact caused him to scream, spin around and fall to the ground. The ultimate result of the injury was the removal of the eye.
No daytime recreational supervision was provided by the Authority. However, the Jersey City Recreation Department detailed two of its employees to supervise recreational activities on the premises between 6 and 9 P.M., on a five-day week *416 basis. The Authority also employed three Sullivan Agency guards to keep order on the premises. Two of these men were on duty from 3 to 11 P.M., and the third from 6 P.M. until 2 A.M. The Jersey City police patrolled in the neighborhood, but only entered the project when called. Additional facts will be referred to infra.
Defendant moved for dismissal at the end of the plaintiffs' case and again for judgment at the close of the entire case. R.R. 4:51-1. Both motions were denied. After the verdict in favor of plaintiffs, defendant made a motion for judgment notwithstanding the verdict, which was likewise denied. R.R. 4:51-2.
Defendant's grounds for reversal are, in substance, that: (1) plaintiffs failed to establish that the infant plaintiff was injured by a thrown stone; (2) there was no breach of any duty owing to plaintiff; (3) the incident complained of was not reasonably foreseeable, and (4) it was not proximately related to the alleged negligence charged.
We turn to consideration of the first point raised. The mere fact that no one specifically saw a stone strike plaintiff's eye was not fatal to recovery. Cf. Pfeifer v. Standard Gateway Theater, 259 Wis. 333, 48 N.W.2d 505, 507 (Sup. Ct. 1951). If the circumstances were such as to take the case out of the realm of conjecture and within the field of legitimate inference from established facts, a prima facie case was made out. What was required was that plaintiffs establish the probability, as distinguished from mere possibility, that the injury was caused by a thrown stone as alleged. Flexmir Inc. v. Lindeman & Company, 4 N.J. 509, 514 (1950); Hansen v. Eagle Picher Lead Co., 8 N.J. 133, 141 (1951). Proof to a certainty was not required. Callahan v. National Lead Co., 4 N.J. 150, 155 (1950). See also Mazzietelle v. Belleville Nutley Buick Co., 46 N.J. Super. 410, 417 (App. Div. 1957).
In the instant case, while there was no direct evidence introduced that the cause of William's injury was, in fact, a thrown stone, there was sufficient circumstantial evidence from *417 which the jury could have concluded, on grounds of probability, that he was indeed struck in that manner. It was not disputed that William was injured at the time and place in question. Something struck him in the left eye. A sharp rock with blood on it was found nearby. He was not struck by the ball, since it was in the vicinity of center field while he was between home plate and first base. It is not suggested what other object could have struck him and escaped detection. Compare McManus v. New Jersey Water Co., 22 N.J. Super. 253, 261 (App. Div. 1952).
Defendant next contends that even if the jury found that the infant plaintiff was struck in the manner claimed, it was error to submit the question of defendant's negligence to the jury. In support of this contention it is urged that there was no duty owing the infant plaintiff, that the incident which occurred was not reasonably foreseeable, and that the alleged breach of duty was not proximately related to the accident.
Initially, it is to be noted that the area in question is one over which the landlord retained control. It was designed for the use to which it was being put at the time of the happening of the accident. The rule is well settled that a landlord owes to tenants and their children a duty of reasonable care as to such portions of the premises. Doud v. Housing Authority of Newark, 75 N.J. Super. 340, 344 (App. Div. 1962). Duty signifies conformance to a reasonable standard of legal conduct in the light of the apparent risk. Wytupeck v. Camden, 25 N.J. 450, 461 (1957); McKinley v. Slenderella Systems of Camden, N.J., Inc., 63 N.J. Super. 571, 581 (App. Div. 1960). Negligence arises from a breach of such duty and is relative to the time, place and circumstances. It is tested by whether the reasonably prudent person would recognize and foresee an unreasonable risk of harm to others. The standard of care is the conduct of persons of ordinary prudence under the circumstances. McCabe v. N.J. Turnpike Auth., 35 N.J. 26, 35 (1961). Notwithstanding the defendant's public nature, its liability for negligence must be adjudged on the principles of law *418 applicable to private owners of property. Goldberg v. Housing Auth. of Newark, 38 N.J. 578, 581 (1962).
The case was submitted to the jury upon the issue of whether defendant had exercised ordinary care in the manner in which it maintained and operated the recreation area in question. The jury was called upon to determine whether the occurrence in question could reasonably have been foreseen and whether it was a proximate result of defendant's lack of due care.
The negligence asserted here was not limited to lack of adequate supervision, as suggested by defendant in its brief, but was related more specifically to the fact that, with knowledge of dangerous conditions in the area, defendant, by omitting to take protective measures, failed to exercise reasonable care. Since reasonable care connotes care commensurate with the foreseeable risk of harm, we turn to consideration of the evidence bearing thereon.
As has been pointed out supra, the recreation area in question was located in the middle of the project. A four-foot cyclone fence, built to shut off adjacent grassy areas, virtually surrounded it. The area had a permanent hard surface, and it was on a portion of this that the baseball diamond had been marked off. The infant plaintiff testified that both prior to and on the date of the accident he had noticed many stones on the ball field, some little and some as big as golf balls. He had seen boys throwing stones around the baseball diamond on many occasions, the last time being two weeks prior to the accident. Other witnesses corroborated the presence of stones on the baseball diamond and testified that it was a regular occurrence to see children throwing them at one another. One witness testified that there was a garden alongside the baseball area which contained rocks which children were in the habit of throwing onto the baseball diamond. Another witness, who was one of the first to get to plaintiff and had observed stone throwing by two nine-year-old boys about an hour before the accident, testified that he had never seen anyone *419 clean up the area as far as the stones or rocks were concerned.
There was substantially no contradiction of this line of testimony. The deposition of Mr. Flesey, defendant's managing agent for the project since May 1960, which was read by plaintiff, was to the effect that, prior to the accident he had observed stones, sometimes as many as 50, around the ball field. He testified:
"QUESTION: And did you ever see any of the children or any of boys or adults prior to April 4, 1961 throw stones about the ball park area?
ANSWER: Yes.
QUESTION: And how many times prior to April 4, 1961 have you seen that?
ANSWER: That I wouldn't know. My office does not face the play area, so I wouldn't be in a position to see it unless I were walking through the project site, you see.
QUESTION: How often would you walk through the project site onto the ball park area during the week?
ANSWER: Sometimes twice a week.
QUESTION: And have you seen the boys playing ball in that area?
ANSWER: Yes.
QUESTION: And you have seen boys throw stones around that area?
ANSWER: Not every time I was out there. Occasionally I would see it, yes."
And further:
"QUESTION: And from May 1960 to April 4th, 1961, approximately how many times would you say you saw boys throwing stones and rocks in the ball park area, approximately?
ANSWER: I couldn't answer that question. From the time I first went there?
QUESTION: Yes.
ANSWER: Until the accident?
QUESTION: That's right.
ANSWER: I would have no idea.
QUESTION: Would you say once or twice a week?
ANSWER: On the average I would say twice a week." (Emphasis added)
From the above, it could be concluded that he observed stone throwing nearly every time he walked onto the ball park area. *420 The only corrective measures he took were to warn and reprimand the participants. He did not take their names, notify their parents or otherwise pursue the matter.
The defendant urges that the factual situation presented is controlled by Goldberg v. Housing Auth. of Newark, supra. We find that case to be clearly distinguishable. It involved the asserted duty of a municipal housing authority to provide private police protection for its tenants. The court there pointed out that no statute required the owner of residential property to have a private police force and that any policeman assigned under N.J.S.A. 40:47-19 would not be subject to the order of the owner but rather would be under the supervision and direction of the chief of police. In Goldberg the hazard against which defendant allegedly failed to afford protection was the risk of injury due to crimes of violence which might be perpetrated on the premises. The court held that it was the duty of government to protect against these. In the instant case, the hazard against which defendant assertedly failed to afford protection was the risk of injury from the actions of persons who were permitted by the defendant to be on the premises. Presumably, some, if not all of these, were children of tenants. The risk was a continuing one and was specific to the playground area. Defendant's managing agent had had knowledge of it since he became employed there, some 11 months before.
Neither the industry of counsel nor our own research has revealed any New Jersey decision which specifically prescribes the duty of a housing authority under such circumstances. We find, however, a number of decided cases which point to the legal principles to be followed. In Wytupeck v. Camden, supra, our Supreme Court held:
"* * * Duty arises out of a relation between the particular parties that in right reason and essential justice enjoins the protection of the one by the other against what the law by common consent deems an unreasonable risk of harm such, as is reasonably foreseeable * * * In the field of negligence, duty signifies conformance `to the legal standard of reasonable conduct in the light of the apparent risk.' * * * Duty is largely grounded in the natural responsibilities of *421 social living and human relations such as have the recognition of reasonable men; and fulfillment is had by a correlative standard of conduct."
And further:
"* * * [D]uty must of necessity adjust to the changing social relations and exigencies and man's relation to his fellows; and accordingly the standard of conduct is care commensurate with the reasonably foreseeable danger, such as would be reasonable in the light of recognizable risk, for negligence is essentially `a matter of risk * * * that is to say of recognizable danger of injury.' * * *" (25 N.J., at pp. 461, 462)
In Exton v. Central R.R. Co., 62 N.J.L. 7 (Sup. Ct. 1898), affirmed o.b. 63 N.J.L. 356 (E. & A. 1899), the railroad operated a passenger terminal in New York City. It had prior knowledge of scuffling between cabmen competing for business near its baggage room entrance. It nevertheless did not eject or otherwise deal with them so that, when plaintiff went into the passageway to the baggage room, she was injured when there was a recurrence of scuffling between cabmen. The jury returned a verdict in her favor on the theory that, with knowledge of the scuffling which had taken place, the railroad had failed to take reasonable precautions to guard against the danger therefrom. The court held that the duty owing was reasonable care. It further held:
"It was proper to submit to the jury the question of the dangers of this way, and whether they were habitual, customary dangers, which the defendant could reasonably anticipate might exist, and whether they were such as required precautions against accident and injury to passengers therefrom, and whether the defendant had exercised the required degree of care and caution to protect its passengers from such dangers. If the defendant had notice or knowledge of what might happen in its depot, or could reasonably anticipate what might happen there, dangerous to others lawfully there, it was bound to use care to avoid the injury which might be occasioned, and it would matter little whether the danger was habitually existing or might occur only at intervals. * * *" (62 N.J.L., at p. 13)
See also Neering v. Illinois Cent. R. Co., 383 Ill. 366, 50 N.E.2d 497 (Sup. Ct. 1943), to substantially the same effect.
*422 A somewhat similar result was reached in Sandler v. Hudson and Manhattan R.R. Co., 8 N.J. Misc. 537, 151 A. 99 (Sup. Ct. 1930), affirmed 108 N.J.L. 203 (E. & A. 1931), where it appeared that large crowds of passengers usually and regularly congregated on defendant's station platform at Journal Square during the morning rush hours. Plaintiff, who was injured by the pushing and shoving of the crowd, was permitted to go to the jury on the sufficiency of the precautionary measures utilized by defendant to guard against crowding. This was premised upon the obligation of defendant to exercise reasonable care to protect passengers from dangers of which it knew or which it should have anticipated by the exercise of reasonable foresight.
In our sister state of New York, the matter received judicial attention in DaRocha v. New York City Housing Authority, 109 N.Y.S.2d 263 (Sup. Ct. 1951), affirmed 282 App. Div. 728, 122 N.Y.S.2d 397 (App. Div. 1953). In that case defendant had been troubled by boys, who had been riding their bicycles on the sidewalks and paths of its large housing development. On the day of the accident an employee of defendant had turned on a water spray for children to play in. As the infant plaintiff was engaged in this pastime, he was struck by a boy riding a bicycle. In rendering judgment of liability in favor of plaintiff, the court held:
"It was the act of the defendant landlord to cause the children to congregate at the place where a bicycle rider charged into and ran down the plaintiff infant; the defendant, without obligation, turned on water to form a spray for children to play in on that hot day, and this gratuitous provision for childish entertainment naturally produced a crowd of children; * * *. That congregation of children, under the circumstances, invited danger and should have been adequately supervised to protect these youngsters from just what happened.
The history of bicycle riders there was such as to charge the defendant with knowledge that this danger was ever present, and when the children, engrossed in playing in the spraying shower, were not alert to danger, the need for supervision would be greater. * * *" (109 N.Y.S.2d, at p. 264)
*423 The defendant urges that DaRocha is distinguishable on the ground that there defendant had activated a special play area at what turned out to be a dangerous location. We are unable to agree. Defendant here was likewise responsible for the location of the baseball diamond. In each case the issue was the adequacy of the protective measures taken to guard against a danger which should have been foreseen. See also Hansen v. New York City Housing Authority, 271 App. Div. 986, 68 N.Y.S.2d 71 (App. Div. 1947).
In Geigel v. New York City Housing Authority, 225 N.Y.S.2d 891 (Sup. Ct. 1962), the defendant permitted the playing of punch ball near a walkway in a housing project. While passing on the walkway a child of one of the tenants was injured through being struck by a player. In holding the authority liable, the court said:
"* * * When it is apparent to the landlord that parts of his premises that are common ways and yards are being used as sites for patently dangerous activities and that the use is likely to be continued, the landlord cannot ignore the foreseeable dangers and continue to extend an invitation to the tenants to use the area and not be held accountable for resultant injuries."
We accordingly hold that defendant's duty of exercising reasonable care in the maintenance and operation of the playground area in question encompassed the obligation of providing reasonable supervision to guard against the wrongful conduct of others in the area of which defendant knew or should have known and which, it was reasonably foreseeable, would continue and endanger the safety of those invited to use the area. It was for the jury to determine whether the supervision here furnished comported with this obligation. Compare Williams v. Essex Amusement Corp., 133 N.J.L. 218 (Sup. Ct. 1945); Reilly v. 180 Club Inc., 14 N.J. Super. 420 (App. Div. 1951); Crammer v. Willston Operating Co., Inc., 19 N.J. Super. 489 (App. Div. 1952); Klinsky v. Hanson Van Winkle Munning Co., 38 N.J. Super. 439, 448 (App. Div. 1955), certification denied 20 N.J. 534 (1956).
*424 Defendant next contends that even assuming, arguendo, that it had knowledge of a dangerous activity in the area, i.e., stone throwing, plaintiffs did not establish that the accident in question was reasonably foreseeable. More particularly, it asserts that the testimony as to prior stone-throwing incidents was vague and indefinite, that there was no evidence that such prior stone throwing had taken place in the daytime, or that anyone had previously been injured by reason thereof. But the weight and credibility to be accorded to the testimony of plaintiffs' witnesses as to prior stone-throwing were for the jury. This was especially so here where considerable corroboration had been afforded by the deposition of defendant's managing agent, Mr. Flesey. While we do not hold that, as a prerequisite to recovery, plaintiffs were required to establish that stone-throwing took place during the daylight hours, we note that there was evidence to this effect. Mrs. Mayer, the infant plaintiff's mother, so testified. There was also testimony that stone-throwing had been going on near Mr. Flesey's office, some 350 feet away, about an hour before the accident, (i.e., at 12:30 P.M.). Coughlin v. U.S. Tool Co., Inc., 52 N.J. Super. 341 (App. Div. 1958), certification denied, 28 N.J. 527 (1959), and Melicharek v. Hill Bus Co., 37 N.J. 549 (1962), cited by defendant, are clearly distinguishable. The former is an infant trespasser case, while in the latter there was lack of proof of knowledge by defendant of danger to its passengers from stone-throwing and lack of proof that its driver should have been aware that a stone was likely to be thrown. See Harpell v. Public Service Coordinated Transport, 20 N.J. 309 (1956).
Nor was it a sine qua non to recovery that it be established that someone had actually been struck by a stone on a prior occasion. The question was one of foreseeability. The jury could properly have found from the evidence that the throwing of such objects in an area set aside for the recreation of children could reasonably be expected to cause some injury to children therein. Such children would normally be engaged in play and thus not alert to the danger. *425 It was not necessary that defendant have anticipated the specific manner in which plaintiff came to be injured, so long as it was within the realm of foreseeability that some harm might occur thereby. Avedisian v. Admiral Realty Corp., 63 N.J. Super. 129, 133 (App. Div. 1960); Lutz v. Westwood Transportation Co., 31 N.J. Super. 285 (App. Div. 1954), certification denied, 16 N.J. 205 (1954); Martin v. Bengue, Inc., 25 N.J. 359 (1957); Menth v. Breeze Corporation, Inc., 4 N.J. 428 (1950); Andreoli v. Natural Gas Co., 57 N.J. Super. 356 (App. Div. 1959); Glaser v. Hackensack Water Co., 49 N.J. Super. 591 (App. Div. 1958); Ginnelly v. Continental Paper Co., 57 N.J. Super. 480, 493 (App. Div. 1959), certification denied, 31 N.J. 293 (1960).
Defendant's final contention is that the evidence was insufficient to establish that its asserted lack of due care was proximately related to the injuries sustained. It argues that the stone in question was thrown by an unknown third party; that there was no expert testimony produced as to the number of guards or attendants required, and that there was no proof that if they had been present the accident would have been averted. We find no merit to these contentions.
Ordinarily, the question of proximate cause is for the jury. Rappaport v. Nichols, 31 N.J. 188, 203 (1959); Melone v. Jersey Central Power & Light Co., 30 N.J. Super. 95 (App. Div. 1954), affirmed 18 N.J. 163 (1955); Martin v. Bengue, Inc., supra, 25 N.J., at p. 373; Bacak v. Hogya, 4 N.J. 417, 424 (1950). If the evidence, viewed in the light most favorable to plaintiff, would cause fair-minded men to differ as to whether there was a reasonably probable relation of cause and effect between the alleged negligence and the injuries, the issue must be submitted to the jury. Berger v. Shapiro, 52 N.J. Super. 94, 99 (App. Div. 1958), affirmed 30 N.J. 89, 101 (1959). See also Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102 (1950); Bergquist v. Penterman, 46 N.J. Super. 74 (App. Div. 1957), certification denied, 25 N.J. 55 (1957).
*426 Our examination of the record satisfies us that the issue of causal relation was properly left to the jury. It is settled that a defendant is not relieved from liability where proof of its negligence is accompanied by proof of a foreseeable, though independent, intervening cause. Cwik v. Zylstra, 58 N.J. Super. 29, 34 (App. Div. 1959). Here the evidence was such as to justify a finding by the jury that the Authority, through its agent, had knowledge of stone-throwing by boys in the area for at least 11 months prior to the accident. In the face of this knowledge the jury could have found, from the absence of adequate steps to abate the condition or guard against it, that there was a failure to exercise reasonable care.
It was not necessary that expert testimony be produced as to the number of guards or supervisors required, since admittedly none was on duty at the time of the accident. However, it was undisputed that two of the Authority's Sullivan guards were regularly scheduled to go on duty at 3 P.M., the hour when children would normally be dismissed from school. These guards were charged with the duty of keeping order in the project. It was testified that they stopped children from "fooling around," chased people from places in which they were not supposed to be, and reported children if they were "messing around." The accident occurred at 1:30 P.M. during Easter vacation, when children could be expected to make use of the playground area during additional hours.
Nor was it necessary that plaintiffs establish by proof positive that the presence of supervisors or guards would have averted the accident. It was sufficient if the evidence was such as to justify a finding that defendant's lack of due care was a substantial factor in bringing about the accident. Rappaport v. Nichols, supra (31 N.J., at p. 203); Lutz v. Westwood Transportation Co., supra (31 N.J. Super., at p. 289); Mulquinn v. Lock Joint Pipe Co., 13 N.J. Super. 467 (App. Div. 1951). The jury could well have found that either the taking of more intensive steps to identify those guilty of throwing stones and put an end to their activities, or the presence of guards, would have been effective to prevent the *427 injury. See Lee v. National League Baseball Club of Milwaukee, 4 Wis.2d 168, 89 N.W.2d 811 (Sup. Ct. 1958).
By reason of the foregoing, the trial judge properly denied the defendant's motions to dismiss, and for judgment in its favor. O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319 328 (1953); Long v. Landy, 35 N.J. 44, 53-54 (1961); Bell v. Eastern Beef Co., 42 N.J. 126 (1964). Its motion for judgment n.o.v. was likewise properly denied.
The judgment is accordingly affirmed.