BENJAMIN B. BOSWORTH *vs.* UNION RAILROAD COMPANY.

PROVIDENCE—JULY 28, 1904.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Common Carrier. Duty to Carry Safely.*

While common carriers are bound to exercise, for the safety of passengers, the highest degree of care and foresight consistent with the orderly conduct of their business, with respect to all matters under their control, with respect to the acts of strangers they are liable to the exercise of ordinary care and prudence only, and for such injuries as were reasonably to be anticipated under the particular circumstances and which ordinary care and prudence would have prevented.

Although a strike against an electric street railway was in progress, the company was not guilty of negligence toward a passenger who was struck with a stone thrown by strangers along the line of the route, and was injured in attempting to alight from the car, where there was no indication of danger prior to the throwing of the stones except the presence of a large number of people on the street, and where the motorman was ignorant of earlier violence to a preceding car.

TRESPASS ON THE CASE for negligence.   Heard on petition of plaintiff for new trial, and denied.

DOUGLAS, J.   This is an action to recover for injuries alleged to have been caused by the negligence of the defendant.

From the testimony of the plaintiff and his witnesses it appears that the plaintiff, an elderly man, on the morning of June 12, 1902, was a passenger on one of the defendant's open cars running from Providence to Pawtucket.   A strike against the company had been on for some days, accompanied with violence; but the mob had been suppressed in Providence, and cars were running regularly.   The car ran as usual, stopping from time to time to take on and let off passengers, until it reached a point in Pawtucket on Pawtucket avenue at the junction with East avenue, when suddenly it was assailed with a shower of stones thrown from the side of the way.   The plaintiff was probably struck by a stone, and rose from his seat in fright and extended his hand, as he says, to notify the conductor or to ring the bell.   He was seen to walk to the side of the car and to fall to the ground.   His own memory of what he did is uncertain, and the witnesses are unable to say whether he attempted to step off or not.   When he fell his leg was broken, and he was considerably bruised and hurt in other parts of his body.   There was no indication of danger visible to him or to any one on the car until the stones were thrown, except the presence of a large number of people on the street. The witnesses vary in stating the number of people there. The two policemen and another witness estimate that there were eight hundred or one thousand, and a citizen witness says there must have been one hundred and fifty.   No one states that there was any uproar or threatening behavior in sight of the car on which the plaintiff was until it reached the crowd.   The stones

were thrown by those in the rear, next to the houses. One witness testifies that the next preceding car, some fifteen minutes before, had been stoned a little farther down the street towards the center of the city of Pawtucket, but this car had passed out of sight before the following one appeared. The rest of the testimony relates to the physical condition of the plaintiff and the extent of his injuries.

(1)    After this testimony was in, the defendant moved that the presiding justice direct a verdict in its favor, and he granted the motion, saying: "The defendant would not be liable for an injury received by passengers through the throwing of stones by people outside, unless the car was propelled into a place of known danger, and the proof in this case on that point is simply that another car had been stoned. It does not appear to the court that there is sufficient notice to the defendant or sufficient evidence that the dangerous state of things had prevailed for a length of time sufficient so that the defendant could be presumed to have notice. I therefore direct the jury to return a verdict for the defendant."

To this decision the plaintiff excepted, and now prays for a new trial on the ground that it was erroneous. He argues, first, that notice to the conductor in charge of the car was notice to the company. The suit, he says, does not charge the company with negligence in dispatching the car to Pawtucket, but in proceeding when the mob was seen in the street. We understand that this is exactly the view which the presiding justice took. He decided, in effect, that there was nothing in the presence and behavior of the crowd to notify the motorman or conductor that there was danger in proceeding, and, therefore, the company is not liable.

We are unable to see how the court could have taken any other view of the situation. The motorman saw ahead of him a number of men walking, as one witness says, slowly along the street, making, as all agree, no hostile demonstration. Among them were two policemen, charged by law with the duty of suppressing disturbances. The motorman could not have known that a car had been stoned by these people fifteen minutes before. No warning came from the policemen or others

that the crowd had hostile intentions, and the motorman's duty was clearly to carry his passengers along his route as far as they wished to go, until, at least, some threat or show of obstruction should be made. When the stones were thrown the car was in the midst of the crowd and there was no course open to him but to proceed. We can not see that in any respect he or the company, as represented by him, was guilty of any negligence towards the plaintiff. If, on sight of the crowd a quarter of a mile away, the car had stopped and refused to carry the plaintiff farther, he might well have complained of breach of duty. Having the same knowledge which the motorman possessed, the plaintiff could have left the car before approaching the crowd if he had chosen to do so. The risk, if any there was, was as obvious to him as to the defendant's servants.

The defendant has referred us to a case decided by the Supreme Court of Minnesota, January 23, 1903, *Fewings* v. *Mendenhall Receiver*, 93 N. W. Rep. 127, which is similar to the case at bar in all its important features. In that case a passenger in one of the defendant's cars was struck by a stone thrown by a strike sympathizer and injured. The court held that, though a strike against the road was in operation, it was no negligence for the receiver to run the cars, nor to omit to cover the windows of them with canvas or to draw down the leathern curtains, nor to fail to notify the plaintiff of the existence of a strike which he and all intelligent citizens were aware of.

The cases defining the degree of care imposed by law upon a carrier of passengers are carefully reviewed, and the conclusion is reached that, while common carriers are insurers of freight against all damage except the act of God and the public enemy, and are bound to exercise for the safety of passengers the highest degree of care and foresight consistent with the orderly conduct of their business with respect to all matters under their control, the same strict rule does not apply to acts of persons beyond their control.

The court say, p. 129: "A number of other cases are cited and relied upon by counsel, wherein the general rule is stated substantially as contended for by him, namely, that a carrier

of passengers is required to exercise the utmost vigilance to protect passengers from insult and injury from whatever cause arising; but an examination of them shows that they are all cases where the carrier had permitted third persons to enter upon its premises or cars, and thereafter failed to exercise a proper degree of care to restrain them from acts of lawlessness; and there can be no question as to their soundness. The question before us is whether this strict rule applies to the act of a stranger, such as here shown. That it does not is sustained by some very respectable authorities. *Tall* v. *Packet Co.*, (Md.) 44 Atl. 1007, 47 L. R. A. 120; *Railroad Co.* v. *MacKinney*, 124 Pa. 462, 17 Atl. 14, 2 L. R. A. 820; *Thomas* v. *Railroad Co.*, 148 Pa. 180, 23 Atl. 989, 15 L. R. A. 416; *Railroad Co.* v. *Pillsbury*, 123 Ill. 21, 14 N. E. 22. In our opinion, it would be unjust to require a carrier of passengers, either a steam or a street railway company, to exercise the utmost care and vigilance to guard and protect passengers from criminal acts of strangers, persons not under its control or subject to its orders, and for whose acts it is in no way responsible. And we hold, without further discussion, as respects the acts of such strangers, that carriers of passengers are liable to the exercise of ordinary care and prudence only. Such carrier is liable for all injuries resulting from the acts of strangers which are reasonably to be anticipated under the particular circumstances, and which ordinary care and prudence, had it been exercised, would have prevented." These observations are supported by the cases cited, and seem to us just and reasonable. It is the duty of the civil authorities, not of a railroad company, to preserve order in the streets.

The opinion of the court upon demurrer to this declaration, 25 R. I. 202, stated the general rule which requires of a railroad company the utmost care and skill in the operation of their road and the safe transportation of their passengers, but the court did not have before them the circumstances of the case as they were since developed by the evidence.

The declaration alleged that the car was run into the midst of a mob who were threatening to do violence and to inflict

injury upon the company's property, which the company well knew. The demurrer to these allegations was rightly overruled. While the rule as stated is of very general application, it must be limited, at least, to known dangers, when they are occasioned entirely by causes beyond the control of the carrier.

The plaintiff's counsel calls to our notice the historical events connected with this strike, and particularly that very early in the morning of the day when this injury was inflicted the governor had ordered a military force to Pawtucket to preserve order and restrain violence towards the property and employees of the street railroad company, and had issued his proclamation calling upon persons riotously assembled at Pawtucket to disperse. These circumstances are such as the court takes judicial notice of when brought to its attention (1 Greenl. Ev. § 6; Steph. Ev. p. 121, n. 9), but there is nothing in the record or the decision to show that they were ignored in the consideration of the case by the trial court. Briefly considered, the circumstances amount to this—that the municipal authorities of Pawtucket had tolerated violence and crime, and the chief executive of the State had interposed to repress them. It was very easy to anticipate that violence would cease when the power of the law was displayed on the side of peace; and so, after the militia had taken up the work which the police had neglected, the company might confidently resume its service with no fear of danger. These considerations would address themselves more properly to the controlling officers of the company who dispatched the cars upon their several routes, but if the motorman and conductor of this car knew of the situation they might rely in all good faith upon the security which the militia was sent to effect. The fact that the evildoers had been warned and the militia had assumed the duty of keeping the peace were invitations to the defendant to run its cars, not notifications of danger.

Taking all the circumstances into consideration, it is plain that the defendant was not guilty of any neglect of duty towards the plaintiff, and the verdict was properly directed.

Petition for new trial denied, and case remitted to the common pleas division for judgment.

TILLINGHAST, J., dissenting.   I think this case should have been submitted to the jury.

A strike against the defendant company had been on for some days prior to the happening of the accident in question, accompanied with more or less mob violence, and on the very morning in question the governor of the State had ordered a military force to the city of Pawtucket to preserve order and restrain violence against the property and employees of the railroad company, and had issued a proclamation calling upon persons riotously assembled at Pawtucket to disperse.   Early in the morning of June 12, however, a crowd had begun to gather at the junction of East and Pawtucket avenues, in Pawtucket, and at the time the car upon which the plaintiff was riding approached that place it numbered, according to the decided preponderance of the testimony, from seven hundred to one thousand people.

The plaintiff testifies that he did not know that the strike had assumed serious proportions in Pawtucket, and also that he was ignorant of the presence of a crowd ahead of the car, as he was facing partially sideways and looking in that direction, until about the time the stones were thrown into the car. The motorman, however, must have seen the crowd, which swarmed in and near to the road at the junction aforesaid, from quite a long distance away.

Whether in view of these facts it became the duty of the men in control of the car to take some measure to protect the plaintiff and to refrain from propelling him into said crowd without notifying him of the possible danger and giving him an opportunity to leave the car was, in my judgment, a question for the jury to determine.   In other words, it was for the jury to say whether, on the facts which appeared in evidence, the persons in charge of the car, in the discharge of their duty to the passengers, should have anticipated that the crowd was a source of danger to the car and its occupants.

As to the exact degree of care which a carrier of passengers

is bound to exercise, to protect them from the attacks of third parties who are not under its control, is a question upon which the authority is meagre and somewhat uncertain. It has often been laid down generally that a carrier of passengers for hire is bound to use the utmost vigilance in guarding passengers from violence from *whatever* source arising which might reasonably be anticipated or naturally expected to occur, in view of all the circumstances. *Flint* v. *Norwich, etc., Co.*, 34 Conn. 554, approved in *Putnam* v. *Ry. Co.*, 55 N. Y. p. 114. See also 5 Am. & Eng. Ency. L. 2 ed. 554, note, for cases in which the proposition was cited with approval. The same general doctrine has been adopted and approved in our own State. *Boss* v. *Prov & Wor. R. R. Co.*, 15 R. I. 149, 154; *Elliott* v. *Newport St. Ry. Co.*, 18 R. I. 707, 710. In none of these cases, however, did the facts involve the question as to the degree of care which a railroad company is bound to exercise to protect passengers from the attacks of third parties not under its control. Upon a careful review of all the cases which I have been able to find I am of opinion that it is impossible to lay down a general principle which will satisfactorily meet every case of this class. The circumstances surrounding such attacks will be so diverse that the rule to be applied must be determined to a large extent by the facts themselves. As was said by Mr. Justice Scott in *Chicago & Alton R. R. Co.* v. *Pillsbury*, 123 Ill. at p. 22: "With regard to danger and hazard to travel arising otherwise than on the train, and not incidents of such travel, the degree of care to be observed to discover and prevent all danger to and consequent injuries to passengers, must depend in a large measure on the attendant circumstances. No doubt in many cases, if the carrier observes ordinary care and diligence to discover and prevent injury to passengers, such as any prudent person would do for his own personal safety, it will be exonerated from liability. In other cases and under other circumstances it will, no doubt, be the duty of the carrier to exercise the utmost care, skill, and diligence to protect the passengers from danger and injury, so far as the same by the exercise of such care and skill and diligence could have been reasonably and practically foreseen

and anticipated in time to prevent injury. In no case must the carrier expose the passenger to extra hazardous dangers that might readily be discovered or anticipated by all reasonable, practicable, care and diligence." This statement of the law is approved by Ray in his work on "Negligence of Imposed Duties," § 66.

The case of *Fewings* v. *Mendenhall*, 88 Minn. 336, mainly relied on in the majority opinion, which lays down the rule broadly that ordinary care only is required, seems to fall within the first half of the rule above stated. In that case the plaintiff, during a strike inaugurated by street railway employees, took passage in the evening on a street car. While the car was proceeding along a certain street, a strike sympathizer threw a stone which passed through one of the windows of the car and seriously injured the plaintiff. But it must be noticed that there is this important difference between that case and the case at bar, viz., that the agents of the defendant there had no notice, aside from the general conditions of the strike, that the car was in any particular danger at the time the plaintiff was struck. There the stone was thrown in the night time by an isolated individual; here a volley of stones was thrown by a large crowd which was visible from a distance of nearly a quarter of a mile. It is to be observed that the authorities upon which the Minnesota case relies do not purport to enunciate the general principle of law governing all cases of injuries to passengers by third parties, but appear to have been decided in view of their own peculiar facts.

Thus in *Tall* v. *Packet Co.*, 44 Atl. 1007 (Md.), 47 L. R. A. 120, a captain of a steamboat permitted certain passengers to play cards on board, in spite of a regulation of the company forbidding it. In a fight which took place as a result of the game, the plaintiff was injured. The court held that the danger of such a result could not reasonably have been foreseen, and that a verdict was properly directed for the defendant.

In *Pa., etc., R. R.* v. *MacKinney*, 124 Pa. St. 462, the plaintiff, while sitting by an open window in a train, was struck by something like a piece of coal, just about as another train passed in an opposite direction. The case went to the jury,

but it was held error to charge that any accident received during transportation raised a presumption of negligence in the defendant.

*Thomas* v. *Philadelphia, etc., R. R. Co.,* 148 Pa. St. 180, was another case where the plaintiff, while sitting by the open window of a car, was struck by some missile and injured. It could not be discovered what had struck him, nor where it had come from, and it was held that the court properly directed a verdict for the defendant.

I do not think these cases warrant the conclusion which was reached by the Minnesota court, that, *as a general proposition,* as respects the acts of strangers, carriers of passengers are liable to the exercise of ordinary care and prudence only. On the contrary, I consider that the rule laid down in the Pillsbury case is preferable, and that the rule to be applied will vary materially according to the circumstances of the case. If the rule announced in the Minnesota case was intended to apply to that case only, or to cases involving similar facts, I fully agree to it, for in my judgment that case was rightly decided. What I object to is the applying of that rule to a case like the one at bar, which is very dissimilar.

As to the criterion which will determine whether a carrier is bound to use the utmost or only ordinary care and skill to protect passengers from the wrongful acts of third parties, I think it will depend upon whether the carrier has reason to anticipate that the conveyance is in peculiar danger from that source. *Buehler* v. *Union Traction Co.,* 49 Atl. Rep. 788. And that the case at bar falls within the latter class of cases is established by our own decision in this very case, overruling a demurrer to the declaration, and reported in 25 R. I. 202. Dubois, J., in delivering the opinion of the court in that case, said: "The more stringent rule is established for the protection of passengers while in transit. During their passage they are to be guarded not only against accidents resulting from defects in the running appliances, but also from dangers arising out of the recklessness or carelessness of the servants of the common carrier. . . . In approaching any place of danger it is the duty of the common carrier of passengers

and its servants to exercise the utmost care, caution, vigilance, and skill which prudent men would use under like circumstances." If, then, the motorman had reason to anticipate danger from the presence of the crowd in the street, I think he was bound to exercise the degree of care above stated. But the ruling of the trial court seems to go the length of saying, in effect, that under no reasonable view of the facts did the motorman have cause to anticipate danger. I can not agree to this. Under the circumstances appearing in evidence regarding the strike, I do not think it can be said as matter of law that the gathering of a crowd of nearly one thousand people at said point on the line of the road was not an indication of danger. It is unfortunately only too common for strikes to be accompanied with mob violence; and the throwing of stones by a crowd of strike sympathizers is not of such rare occurrence that a jury might not find it reasonably to be anticipated in such a case. I therefore think that it was for the jury to say whether the motorman and conductor had reason to foresee danger to the passengers in this case.

If that question should be decided in the affirmative the further question would arise, viz., whether the servants and agents of the defendant did exercise that high degree of care and skill, under the circumstances of the case, which will exonerate it from liability. And, as held in the previous opinion in this case, that also is a question of fact which must be determined by a jury.

That the majority opinion now given practically overrules the former opinion, seems to me to be very clear.

*John W. Hogan* and *Henry E. Tiepke,* for plaintiff.

*Henry W. Hayes, Frank T. Easton,* and *Lefferts S. Hoffman,* for defendant.