JOHN SKILLEN, APPELLANT, v. WEST JERSEY AND SEASHORE RAILROAD COMPANY, RESPONDENT.

Argued June 27, 1921—Decided November 14, 1921.

1. The carrier owes to a passenger the duty of exercising a high degree of care to protect him from injury by other passengers on its cars, if the danger is, or in the exercise of due care can be, known to the employes of the carrier and prevented by them, and if it fails in its duty in this respect it is liable for the resulting injury.

2. Plaintiff, while a passenger on the same car of defendant's train with a number of schoolboys returning from school and frolicking in the car, was struck in the eye and injured by a spitball or wad of paper thrown or snapped by one of them. There was evidence to show that this was a frequent practice on that train, and that it had come to the knowledge of the train crew, but that they had done little or nothing to stop it. *Held,* that it was for the jury to say whether the defendant had failed in its duty of care toward the plaintiff and that a nonsuit was improper.

On appeal from the Supreme Court.

For the appellant, *Wescott & Weaver.*

For the respondent, *Bourgeois & Coulomb.*

The opinion of the court was delivered by

TRENCHARD, J.   This was an action to recover for personal injuries and was tried at the Camden Circuit.   The plaintiff was nonsuited and appeals from the judgment entered thereon.

The plaintiff, a passenger on the railroad of the defendant company, was struck in the eye and injured by a spitball or paper wad which had been thrown by one of a number of school boys who were also passengers on the train.   This wad was thrown or snapped by means of a rubber band.   Apparently, a number of the pupils from the high school at Woodbury were in the habit of indulging in this sport for their own amusement and without regard for the safety of other passengers.   The case as originally tried resulted in a verdict for the plaintiff.   On a rule to show cause that verdict was set aside by the Supreme Court in an opinion in which it was pointed out that, assuming these occurrences were so frequent as to charge knowledge thereof upon the railroad company, the evidence showed, so far as it bore upon this point, that "the railroad's employes stopped the play whenever it was seen."   The case was sent back to be retried and the trial judge nonsuited the plaintiff, saying that he had difficulty in understanding just what the Supreme Court meant by its opinion, but that he was bound to follow what was there decided, and, as he understood it, the case then presented was substantially identical with that which was presented at the first trial.

We are of the opinion that the nonsuit cannot be sustained. The difficulty, as we see it, arose from the failure of the learned trial judge to recognize the difference between the case made at that trial and that dealt with in the Supreme Court.   To us the distinction between the two cases is quite

apparent.    In the first case, as the Supreme Court said, "so far as appears the railroad employe stopped the play whenever it was seen," while on the present trial there was considerable evidence that this was not so.    One of the boys testified that he took part in this amusement; that he shot these wads in the presence of trainmen and that they did not stop him or say anything to him.    He also testified that he saw other boys doing the same thing in the presence of employes in charge of the train, and that he never saw the employes do or say anything to stop the practice.    Moreover, the plaintiff himself testified that this practice was indulged on the day of the injury and upon other days in the presence of the railroad's employes, without any effort on their part to stop it.    Such testimony is the distinguishing feature between the testimony at the first trial and that at the trial now under review, and we think very clearly made the case one for the jury upon the question whether the railroad company had notice of the practice and made reasonable efforts to stop it.    The carrier owes to a passenger the duty of exercising a high degree of care to protect him from injury by other passengers on its cars, if the danger is, or in the exercise of due care can be, known to the employes of the carrier and prevented by them, and if it fails in its duty in this respect it is liable for the resulting injury. *Exton* v. *New Jersey Central Railway Co.*, 63 *N. J. L.* 356; *Hoff* v. *Public Service Railway Co.*, 91 *Id.* 641.

The judgment below will be reversed, to the end that a *venire de novo* may issue.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, VAN BUSKIRK, JJ.    14.