PAGE, Appellant, v. SIOUX FALLS AUTO DEALERS' ASS'N., Respondent.

(227 N. W. 482.)

(File No. 6610. Opinion filed November 19, 1929.)

*M. G. Luddy*, of Sioux Falls, for Appellant.

*T. M. Bailey* and *A. M. Freeman*, both of Sioux Falls, for Respondent.

BROWN, J. For several years prior to the injury out of which this action arises defendant conducted an automobile show in the city of Sioux Falls, at which automobile dealers exhibited the cars in which they dealt, and were in the habit of giving out colored advertising booklets and other things, such as pennants, toy balloons, pencils, and other small trifles advertising their wares.

Admission to the show was by ticket, for which a charge was made, but frequently children were permitted to enter without charge, and were given the toys or souvenirs which were given by the agents for the sale of the different cars. The trinkets and souvenirs advertised the cars.

The show in the spring of 1926 was held in a building designated the Coliseum, to which there was an entrance lobby measuring approximately 30 by 50 feet. The lobby floor was of tile, and sloped slightly upward from the entrance. During the continuance of the show it was a common thing for school boys after school to collect in the lobby, while waiting for an opportunity to enter, and engage in such play as boys usually indulge in. In questions to witnesses, this play is at times referred to as "roughhouse tactics," but one of the principal witnesses for plaintiff said: "Roughhouse tactics—that is a little strong for the antics of the boys; there was a little shoving going on, and so forth." And the evidence as to any specific conduct is that they were sliding on the tile floor in the manner of skating, grabbing each other's caps, pushing and scuffling, playing leap frog, and pulling chairs out from under boys sitting on them.

Plaintiff was then a boy about 9 years of age, had learned that boys might get in free and get some of the souvenirs, and after school he went along with another boy to the Coliseum, where there were from 15 to 20 boys in the lobby, playing in the manner hereinbefore described. There was but one chair in the lobby, which was beside a desk used by the defendant's secretary for registration purposes. When the secretary came into the lobby, plaintiff spoke to him in regard to getting in, and the secretary told him to sit down in that chair, and after a little while he would see about getting him in. While sitting there plaintiff heard a man remark that it was going on 5 o'clock, and as a boy of his acquaintance, who distributed papers, was among those in the lobby, plaintiff started across the lobby to inform this boy that it was time for him to be starting on his route with the papers. While going to this boy, another boy came sliding along the floor as if skating, knocking plaintiff's feet out from under him, and another boy fell on him, breaking his leg. It would appear that both plaintiff and this other boy had their feet knocked from under them by the boy who was sliding. Plaintiff had in no way participated in the play.

On the trial of this action for damages sustained through the broken leg, both parties move for a directed verdict. Defendant's motion was denied, and plaintiff's granted. The court submitted to the jury only the question of the amount of damages and from a judgment for defendant notwithstanding the verdict and from an order denying a new trial, plaintiff appeals.

It may be conceded that defendant, in conducting the automobile show, was bound to exercise ordinary care to prevent injury to those lawfully visiting the show, and likewise that plaintiff was a lawful visitor at the time he was injured. The only question demanding attention is whether the evidence shows an absence of such ordinary care on part of the defendant, and we are of the opinion it does not. The evidence clearly shows that the playing indulged in by the boys in the lobby was only such as boys of ordinary health and vitality commonly indulge in. They did not have roller skates on, and we do not think that skating along a tile floor in the manner which the evidence shows they were doing could reasonably be expected to result in such injury as plaintiff sustained. Had plaintiff been knocked down and sustained a like injury as a result of boys sliding along the sidewalk of a city, we do not think the city could be held liable, although it is the duty of a city to maintain its streets reasonably safe for those who may be lawfully using them. A lobby 30 by 50 feet in area is not densely crowded by the presence of 15 to 20 boys, and while the evidence shows that similar conduct had been indulged in by boys during a number of years in which the shows were held, prior to the time of plaintiff's injury, there is no evidence that any person had ever been knocked over, or that any injury of any kind ever resulted from such play before.

Plaintiff cites the cases of Exton v. Central Railroad Company of New Jersey, 62 N. J. Law, 7, 42 A. 486, 489, 56 L. R. A. 508, and Skillen v. West Jersey & S. R. Co., 96 N. J. Law, 492, 115 A. 372, and argues that these cases are exactly in point to the question herein involved; but we think there is a difference between those cases and the instant case. In each of those cases the action was against a carrier of passengers for hire, and in the decision that aspect of the case was stressed. The court says in the Exton Case: "Carriers of passengers are bound to exercise the utmost care in maintaining order and guarding those they transport against vio-

lence, from whatever source arising, which might be reasonably anticipated or naturally expected to occur." Our Rev. Code 1919, § 1114, lays down the same rule: "A carrier of persons for reward must use the utmost care and diligence for their safe carriage."

In the Exton Case plaintiff was injured by being knocked down in a scuffling engagement by two cabmen, who were waiting in the station. There was evidence that this scuffling was a common thing on the part of cabmen, and that passengers had previously complained to the servants of the company of being disturbed, even injured, thereby. In the Skillen Case the passenger was injured in the eye by a paper wad shot or snapped by means of a rubber band. There was evidence that schoolboys who were passengers on the train were in the habit of indulging in this sport for their own amusement, and without regard to the safety of other passengers, and had often indulged in it in the presence of defendant's employee in charge of the train. The sport indulged in by the schoolboys in that case was such as might reasonably be expected to result in just such injury as plaintiff sustained.

The undisputed evidence in the instant case shows that a city policeman, who was around the Coliseum for the purpose of keeping order, and likewise one or two employees of the defendant, put the boys out of the lobby on quite a number of occasions that afternoon, and that as soon as their backs were turned the boys crowded in again and continued their play. We think this case should be governed by the principle applied in the case of Briese v. Maechtle, 146 Wis. 89, 130 N. W. 893, 35 L. R. A. (N. S.) 574, Ann. Cas. 1912C, 176, where plaintiff, playing marbles in the school playgrounds, was run into by defendant, who was being chased by another boy. It was held that the injury was accidental, and that defendant was not liable. In that case the action was against the boy who ran into the plaintiff, the actual person who occasioned the injury; but it was held that the injury was not one for which even the person occasioning it was liable in damages.

The judgment and order denying a new trial are affirmed.

SHERWOOD, P. J., and POLLEY and BURCH, JJ., concur.

CAMPBELL, J., not having heard the oral argument, takes no part in this opinion.