THOMAS J. ROURKE, PLAINTIFF-RESPONDENT, v. EDWARD J. HERSHOCK, DEFENDANT, AND PUBLIC SERVICE COORDINATED TRANSPORT, DEFENDANT-APPELLANT.

Argued November 28, 1949—Decided January 9, 1950.

Mr. *Francis M. Seaman* argued the cause for respondent.

Mr. *Carl T. Freggens* argued the cause for appellant (*Mr. Richard Fryling,* attorney).

The opinion of the court was delivered by

CASE, J.   The dispute centers upon the degree of care which the Public Service Coordinated Transport, a common carrier, herein called the defendant, was obliged to exercise toward the plaintiff under the peculiar facts of the case.

On a dark night, January 21, 1947, plaintiff, knowing his destination only by name and unacquainted with the territory covered by the route, entered the defendant's bus at Elizabeth, paid his fare and told the driver he wanted to go to Barber.  Plaintiff was carried beyond his destination and was let out at Perth Amboy where he entered another of defendant's buses.  He asked the driver of that bus whether it went to Barber, and was told that it did.  He explained that he had just been carried beyond Barber and wanted to go there, and the driver said he would let him out at that place.  Plaintiff paid his fare, took a seat and the bus started. Presently plaintiff again asked the driver to tell him when the bus reached Barber and the driver once more undertook to do so.  After a few minutes plaintiff went to the driver and asked "How about Barber?"  The driver said, "We passed it.  I will stop a bus coming down the other way and tell him

to let you off there." After a few minutes the bus stopped near a bend in the road at a point about one hundred sixty feet up a three-hundred-foot grade over a railroad overpass. It was not a transfer point, but the plaintiff did not know that and was not informed. The driver signaled a bus going in the opposite direction and that bus stopped also, in such a relative position as that, in effect, the roadway space available for moving traffic was narrowed by the width of the two vehicles. The driver of the first bus told the driver of the second that he had a passenger for him; that he wanted the passenger taken back to Barber because he had "overridden." He also told plaintiff to go around the front of the bus on which he then was and get on the other bus. Plaintiff, following directions, got off, and passed around the front of the first bus in the direction of the second; as he did so the two drivers were in conversation with each other. He looked to his right and saw that there was nothing coming. At the edge of the bus he looked to his left. Because of the angle at which the bus was placed with respect to the curve he could see only about a hundred feet, but there was nothing within his line of view. He was not warned by the driver about the approach of an automobile. He took a couple of steps more toward the other bus and as he did so saw the headlights of a car, then distant about one hundred fifty feet, coming rapidly from his left. He did not try to complete the crossing lest he could not make it; he hesitated to retreat fully into the path of the bus he had just left lest that vehicle start up and hit him. So he stepped back close to that bus but not in its way. He was struck by the oncoming car and seriously injured. He brought this suit against the carrier and the car-driver. The jury returned a verdict for plaintiff as against the defendant carrier, but a verdict of nonsuit in favor of the car-driver. The Appellate Division affirmed. 4 *N. J. Super.* 44. We certified the case on defendant's petition. The alleged trial error before us is the refusal of the court to direct a verdict for the defendant.

Defendant contends that it was not under a duty to do more than deposit the passenger at a point that would enable him

safely to reach the side of the road at the right of the bus. We do not find any substantial dispute in the testimony over the assertion that the bus did stop at such a point, but the issue of negligence may not be so simply dismissed.

It was competent for the jury to find a state of facts leading to the conclusion that the relationship of carrier and passenger had not ended. The facts are not free of dispute; we have stated them in a way that assumes the truthfulness of the plaintiff's evidence and of the inferences of fact that may be legitimately drawn therefrom, for such was the attitude the trial court was obliged to assume in disposing of the motion. The carrier had twice taken its passenger beyond his destination; the last time against the certain and reiterated promise of the driver to discharge him at the place where he wanted to go. The night was dark and the passenger was in strange surroundings. He first relied upon defendant to drop him where he wanted to go and later, that having failed, upon the driver's instructions as to what he should do and how he should do it in order to be taken, as a passenger, to his destination. Assuming the facts to be as we have recited, we think that the duty of the defendant did not end with delivery at a point where access could safely be had to the roadside on the right. The passenger was acting under the personal direction and oversight of the driver. The ride was not ended when he alit. He was still in the physical presence, and was obeying the instructions, of the driver in the transfer from one to another of defendant's vehicles. There were numerous incidents with respect to which defendant could have exercised greater care, among them the selection of relative location, the position in which the bus was stopped, the placing of the buses with respect to each other and the passing traffic, advance general warning to the passenger of the danger from passing traffic, watchfulness for movements of other vehicles in season to give audible and efficient warning to the passenger. It may be that as to no one of these elements did the defendant violate a duty ordinarily owing to a disembarking passenger and yet that the combination of these elements together with an invitation to

leave the bus under the named circumstances created an unusual condition from which an unfulfilled duty arose. *Core v. Delaware, Lackawanna and Western Railroad Company,* 89 *N. J. L.* 224 (*E. & A.* 1916). We think that the jury might, from the proofs, spell an invitation which placed upon the defendant an unmet duty to use care commensurate with the danger to be reasonably apprehended therefrom. The passing, in speed, of an automobile on the highway was a danger to be reasonably apprehended.

The general rule is that a common carrier of passengers must use a high degree of care to protect them from danger that foresight can anticipate. *Rivers v. Pennsylvania Railroad Co.,* 83 *N. J. L.* 513 (*E. & A.* 1912). Against the pertinence of that rule to the instant case appellant cites five New Jersey decisions, *Higgins v. Del Monte and Public Service Coordinated Transport,* 119 *N. J. L.* 3 (*E. & A.* 1937); *Robertson v. West Jersey & Seashore S. R. Co.,* 79 *N. J. L.* 186 (*Sup. Ct.* 1909); *Walger v. Jersey City, etc., Street Railway Company,* 71 *N. J. L.* 356 (*Sup. Ct.* 1904); *Whilt v. Public Service Corporation,* 76 *N. J. L.* 729 (*E. & A.* 1908), and *Kelson v. Public Service R. R. Co.,* 94 *N. J. L.* 527 (*E. & A.* 1920). Four of them are "carry-over" cases, and one a "transfer" case. None of them, we think, serves as a precedent for keeping the present case from the jury.

In *Higgins v. Del Monte* a street car passed some distance beyond the point where the passenger had said he wished to alight and when the car stopped he asked the motorman to hold the car so that he might pass in front and have the benefit of the lights of the car; that was done; the man passed in front of the car, walked some distance along the left side; the car started on; the man walked diagonally across the highway and when a short distance from the curb was struck by an automobile coming from his right. It was held that the duty of a carrier to exercise due care for the safety of a passenger continues only while the relation of passenger and carrier exists; a statement that does not apply because, accepting as true the facts stated above, the relationship of passenger and carrier had not ended.

The *Robertson case* was to the same effect and was based upon a situation wherein the passenger was carried a block beyond her corner; she voluntarily and safely alighted at the next corner, walked a "good piece" on a cross street, and then slipped and fell. There were no continuing relations.

In *Walger v. Jersey City, etc., Street Railway Company,* the passenger disembarked at a point of transfer holding a ticket entitling him to make the transfer; as he was about to cross over to the other car or while he was doing so the first car swung around and hit him. The opinion observed: "If he was taking the most direct course from the car which he had just left to the car upon which he was about to embark, it was for the jury to say whether he was not entitled to believe that he was safe in doing this, or, at least, that he would not be put in jeopardy by anything done by the company while taking this most direct route," and held that the case was for the jury. The decision weighs against rather than for the appellant's contention.

In the *Whilt case* the passenger alighted from a trolley car for transfer from that car to another; in order to make the transfer it was necessary for him to walk about a city block to a point where he would meet another car on which he expected to be carried to his destination; as he disembarked from and attempted to pass behind the car he fell into a protruding fender. It seems that the transfer in that case was one which came regularly under the contract and consisted of the right of the passenger, at a certain point, to leave a trolley car, walk a block to another line, and there take an appropriate car, when it came along, for the completion of his journey. The decision states as an approved rule of law that when a passenger steps from a street car upon the street he ordinarily becomes a traveler upon the highway and terminates his relation as a passenger; but that was clearly said of instances where a transfer is not in progress from one vehicle to another simultaneously waiting on the immediate site, because this significant sentence follows: "It is the rule in this state that in the ordinary case of a transfer from one car to another the traveler continues to be a passenger during

the transfer," citing the *Walger case, supra*. The decision actually turned, however, not so much upon the relationship of carrier and passenger, as upon the question whether the presence of the fender was an act of negligence; and the holding was that it was not.

In *Kelson v. Public Service Railroad Company* the passenger was carried past his destination and was given a ticket to enable him to ride back. He was let off at "Poor Farm Road," a point which was a regular trolley station and at which there was a little building used as a station or waiting room; he waited there for twenty-five minutes or half an hour and :then started to walk back to his destination, a distance of about two miles, on the private right of way of the company, which was fenced in and had cattle guards at the crossing; he stumbled and fell, to his injury. It was held that *when the plaintiff left the station at Poor Farm Road* (not when he safely alighted from the trolley car) his status as a passenger was terminated by his voluntary act.

Appellant also cites additional cases in other jurisdictions, all of which may be distinguished; among them are *Virginia Railway and Power Company v. Dressler*, 132 *Va.* 342, 111 *S. E.* 243, 22 *A. L. R.* 301 (*Va. Sup. Ct. of Appeals* 1922), and *Niles v. Boston Elevated Railway Company*, 225 *Mass.* 570, 114 *N. E.* 730 (*Sup. Jud. Ct. of Mass.* 1917).

In the Virginia case plaintiff was following a course which consisted of leaving the street car on which she was a passenger, taking a transfer for use in continuing her journey on another of the carrier's lines, walking on the public streets to a new position and there waiting for an appropriate car to come along. She alighted on Fourteenth Street near Main; walked to the sidewalk; waited for her companions; walked along the sidewalk on Fourteenth Street to the south curb of Main Street; there undertook to cross Main Street in order to intercept a proper car when it should come along. In making that crossing she was injured. The opinion contains a learned review of cases bearing upon the facts as there presented and concludes that the plaintiff was not, at the time of the accident, a passenger of the carrier. The facts and the

following excerpt from the opinion sufficiently distinguish the case:

"* * * the plaintiff had reached a place of safety on the sidewalk, and then continued of her own volition to approach the place of reembarkation in any way she saw fit. She was not in any wise under the direction or control of the street car company. Nor was any invitation, directly or indirectly, extended to her as to what route she should take. In making the transfer she was exercising her own judgment, * * *."

In the Massachusetts case the plaintiff had been a passenger on a car which went no further than the car barn and it was necessary for her to change to another car if she was to continue her ride. The conductor announced: "All change here. All change. All change for Newton;" whereupon all passengers alighted and followed their own undirected courses over the public highway in reaching the other car. Plaintiff was familiar with the locality, knew that the car was to enter the barn and what the street conditions were. She was injured by the car on which she had been a passenger as it made the curve to enter the barn. It was held that the relationship of carrier and passenger did not exist at the time of the accident. In so holding the court said factually that the woman was not at the time under the direction of the carrier or within its care, and that "in passing from one car to the other she could go on either side of the car, she could choose her own way and her movements were entirely under her own guidance." The court further observed:

"There may be cases where there is evidence to show that the carrier assumes to direct the movements of persons while upon the highway, or where such a duty rests upon it and where the facts justify the finding that although upon the highway, they are in the care of the carrier and the relation of passenger and carrier exists. But there are no such facts in the case at bar."

In short, no decision has come to our attention, either from our own study or citation by counsel, which presses close to the facts of the case.

We conclude that the proofs justify a finding that the defendant assumed to direct the movements of the plaintiff, that

although upon the highway plaintiff was in the care of the defendant, that under the recited facts the relation of passenger and carrier continued and that the defendant, to the injury of the plaintiff, fell short of its duty.

Defendant raises the question whether the court properly left the existence of the passenger-carrier relationship for determination by the jury. If by that is meant that the facts were beyond peradventure against the existence of such a relationship, we have already answered the question. If it is meant that the facts were so clearly in favor of it that the court should have determined the matter affirmatively without reference to the jury, it is to be said (1) defendant is not in position to raise that question and (2) it is not harmed by the procedure.

The judgment below will be affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, BURLING and ACKERSON—6.

*For reversal*—Justice WACHENFELD—1.