35 N.J. Super. 354 (1955)
114 A.2d 295
ALBERT E. HARPELL, PLAINTIFF-RESPONDENT,
v.
PUBLIC SERVICE COORDINATED TRANSPORT, ETC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1955.
Decided May 12, 1955.
*356 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Luke A. Kiernan, Jr., argued the cause for defendant-appellant.
Mr. Thomas F. Hueston argued the cause for plaintiff-respondent.
The opinion of the court was delivered by CONFORD, J.A.D.
Defendant, a common carrier of passengers for hire, appeals from a judgment entered upon a verdict of a jury for damages in favor of plaintiff in an action to recover for injuries sustained while a passenger in an electric trolley car operated by defendant.
On February 6, 1953, in late afternoon, plaintiff boarded the trolley at the Broad Street underground station of the defendant's "city subway" line. He took a seat on the left-hand side of the trolley about eight seats from the front, adjacent to the window. This line emerges from underground a short distance thereafter and continues on a private right-of-way leased by defendant from the City of Newark. Several minutes later, while the car was approaching an overpass for passengers at the Park Avenue Station, the plaintiff heard *357 a tinkle of glass and felt an "explosion or shattering" at his head and blood gushing from above his left eye. The injury resulted in plaintiff's loss of the eye. It was caused by the throwing of a jagged piece of concrete and pebble mixture through the window of the trolley by a boy of about fifteen years of age from a point beyond a cyclone-type fence bordering the right-of-way. The boy's precise position was disputed by defendant's witnesses.
The operator of the trolley testified that at a point identified as about 150 feet before the overpass he saw the boy with what seemed a rock in his hand standing some distance behind the fence, his arm raised as though poised to throw. The fence was seven or eight feet high. He "waved to him not to throw it," and, as he "figured maybe he wouldn't throw it," kept on going. He also testified that he "figured that by the time he threw it he would miss the car because the speed and the throw would be different." Shortly thereafter he heard the crash of the missile.
Another passenger testified that the boy who threw the rock stood close to the fence where it borders a stairway leading to the overpass and that at that point the fence was the height of the boy's waist; that he saw the boy "winding up; and as the trolley passed I put my hand up because I thought the stone was coming in my window, but it came in two windows in front where the plaintiff was sitting."
There was evidence that the trolley windows are covered on the outside by metal screens from the sill to about midway, installed to prevent protrusion of arms by passengers. The object which struck plaintiff came through the window above the screen. The windows on the trolley were of ordinary glass.
Defendant's answers to interrogatories specified 16 instances in four years prior to the accident of its attention being called to the throwing of objects at or into its trolleys in the general vicinity of this occurrence, seven of these being during the last year. Its supervisor testified he received reports of such instances on an average of one a month. A Newark police officer testified defendant had called this condition to the attention of the authorities over a period of time and that *358 three such incidents had occurred within a two-day period in January, 1953; that special assignments of patrolmen to police the situation were made by emergency order on January 15, 1953. The operator of the trolley here involved testified that rock throwing by boys in the vicinity of the accident "wasn't unusual," that it usually occurred near the rush hours and sometimes happened "every other day."
The appeal is basically on the ground that there was no evidence of negligence on the part of defendant warranting submission of the case to the jury and that the trial court was therefore in error in refusing to grant defendant's motion for judgment at the conclusion of the submission of evidence. It urges that there is no showing that it failed to use standard equipment on the trolley or known mechanical devices which might have prevented the accident; that the evidence as to prior similar incidents was not competent or material; and that a carrier's obligation to carry its passengers with a high degree of care for their safety does not extend to dangers emanating from the mischievous or malicious acts of persons not on its premises or subject to its control. The point last noted is one of first impression in this State in the setting here presented and it is apparent on the face of the factual recital that the question is close. We would be less objective than our duty requires not to acknowledge the difficulty of the problem. The defendant operates on a fixed line. The obligations of its service to the public call for rapid and continuous transportation of large numbers of passengers on its trolley line, particularly during rush hours. But its experiences during the period preceding this accident projected it backward in time from a modern rapid-transit electric trolley line to something akin to the ambuscade-conscious stagecoach of the early West. Our concern is with the impact of this untoward episode in the life of this utility on its duty to its passengers.
"The general rule is that a common carrier of passengers must use a high degree of care to protect them from danger that foresight can anticipate." Rourke v. Hershock, 3 N.J. 422, 426 (1950); Miller v. Public Service *359 Coordinated Transport, 7 N.J. 185, 187 (1951). The very statement of the rule exposes the fallacy in defendant's contention that the evidence as to prior similar incidents is not competent or material. Passing the point that the answers to the interrogatories were introduced without objection by defendant it is at once apparent that this data was material as going to the vital question of defendant's reasonable "foresight" of such a hazard as plaintiff was exposed to on February 6, 1953. Defendant's contention that the rule permitting introduction of evidence of prior accidents to show notice to the defendant is confined to cases involving permanently dangerous conditions, as of disrepair of premises, does not accord with the authorities. Exton v. Central R.R. Co., 62 N.J.L. 7 (Sup. Ct. 1898), affirmed 63 N.J.L. 356 (E. & A. 1899) (liability of carrier for injury to passenger on passageway caused by scuffling of hackmen). It was there said, as to evidence of prior accidents arising from rowdyism of hackmen (62 N.J.L., at page 11):
"This evidence was properly admitted to the jury  first, as tending to show the dangers connected with the use of this way to the baggageroom, of which Mrs. Exton could have no previous notice or knowledge, and of the character of the danger, it being such as that its existence could not be previously observed by any passenger in the use of the walk; and, secondly, as tending to show that the servants of the defendant in charge of the station had knowledge of these occurrences and dangers on that walkway, or should have had knowledge of them in the exercise of reasonable care to guard its passengers against accidents and injury from situations of danger likely to arise while under its care. * * *"
In Kinsey v. Hudson & Manhattan R.R. Co., 130 N.J.L. 285, 288 (Sup. Ct. 1943), affirmed 131 N.J.L. 161 (E. & A. 1944), involving liability of a carrier for injuries to a passenger due to assault by an intoxicated fellow passenger, the court said:
"* * * While the carrier is not an insurer of the passenger's safety, he is enjoined to shield him from those dangers which human care and foresight can reasonably anticipate and prevent, compatible with the nature and needs of the business. If the carrier knew, or had reasonable cause to know, of the likelihood of injury to the *360 passenger, and the danger is preventable by the exercise of due care, so measured, he is answerable for the consequences of his nonconformance to that standard. * * *"
See also Skillen v. West Jersey & Seashore R.R. Co., 96 N.J.L. 492, 494 (E. & A. 1921).
Defendant contends that its duty should not be held to extend to hazards originating in unlawful acts committed off its property. Here defendant makes its strongest showing and the argument reflects several aspects requiring inspection. We may lay to one side the matter of reasonable anticipation. Defendant had every reason to know that injuries of this kind were a likely concomitant of its operation in the vicinity of the Park Avenue station notwithstanding they resulted from the acts of boys positioned beyond its right of way. The challenging inquiry is: what could defendant reasonably have been required to do to meet the contingency which eventuated so that it may not justly be in a position to complain that it is thrown to the caprice of a jury or converted into an insurer? Two general areas of prevention are suggested: (a) equipment; (b) control or admonition by the motorman in charge.
In respect to equipment, defendant contends that it is entitled to exculpation because it is not shown to have departed from customary standards of construction and equipment germane to considerations of safety, citing Bobbink v. Erie R.R. Co., 75 N.J.L. 913 (E. & A. 1908); Traphagen v. Erie R.R. Co., 73 N.J.L. 759 (E. & A. 1906); Byron v. Public Service Co-ordinated Transport, 122 N.J.L. 451 (Sup. Ct. 1939); Williams v. New Jersey-New York Transit Co., 113 F.2d 649 (2 Cir., 1940). We are not called upon to decide in the present case whether the New Jersey authorities go, or should be construed to go, so far as to hold that automatic exculpation attends compliance by a carrier with existing standards of equipment or construction, even where those are patently inadequate to meet particular dangers to passengers within reasonable foresight of the utility. In the instant case the question of standards is irrelevant since the hazard involved did not arise from defendant's management *361 of its own facilities and had no relation to those safety factors or considerations which are ordinarily taken into account in planning or installing trolley equipment. For example, the standard as to outside window screens does not require coverage of the entire window since the purpose of preventing protrusion of passengers' arms is met by covering the lower part of the window only. Since propulsion of heavy missiles against trolley windows is not a normal hazard of passenger transportation there is no occasion for the creation of general standards of equipment to meet such contingencies. Defendant may not, therefore, find immunization by mere showing of adherence to standards not here pertinent. Yet special conditions or problems may raise corresponding duties, even from common carriers. Rourke v. Hershock, supra ("the combination of these elements * * * under the named circumstances created an unusual condition from which an unfulfilled duty arose," 3 N.J., at pages 425, 426).
Plaintiff contends that the continuity, frequency and degree of the particular hazard here presented made it not unreasonable to submit to the jury the question as to whether defendant's high duty to its passengers did not require installation of such devices as safety glass in the windows, full-height screens and higher fences along its right of way. There are arguable refutations of the effectiveness of any of these specifics, taken separately. The only evidence submitted at the trial as to the capacity of safety glass to withstand the force of such a missile as the object which injured plaintiff was testimony of a bus driver to the effect that a thrown snowball put a hole in a safety glass windshield and broke it to pieces. On the other hand safety glass has been required by law for all motor vehicles manufactured after July 1, 1935, R.S. 39:3-75, and the statutory definition of safety glass is such as will "reduce, in comparison with ordinary sheet glass or plate glass, the likelihood of injury to persons by objects from exterior sources or by glass when the glass is cracked or broken." Quaere, whether the safety factor of safety glass in application to the present incident is a matter sufficiently within the field of common present-day knowledge as to have *362 properly been submitted to the jury as a basis for finding the defendant negligent in protecting its passengers? See Westerdale v. Kaiser-Frazer Corp., 6 N.J. 571, 574 (1951); 9 Wigmore, Evidence (3rd ed. 1940), § 2570, pp. 542, 544, 547; 6 Wigmore, op. cit. § 1801, p. 244; 31 C.J.S., Evidence, § 6, p. 509; Harris v. Pounds, 185 Miss. 688, 187 So. 891, 893 (Sup. Ct. 1939); Blue Diamond Motor Bus Co v. Hale, 69 S.W.2d 228, 230 (Tex. Civ. App. 1934); Oliver v. Bereano, 267 App. Div. 747, 48 N.Y.S.2d 142, 143, 144 (App. Div. 1944), affirmed 293 N.Y. 931, 60 N.E.2d 134 (Ct. App. 1944); Clark v. Sumner, 72 So.2d 375, 377, 378 (Fla. Sup. Ct. 1954); Foshee v. Wolters, 86 Cal. App.2d 766, 195 P.2d 930, 932 (D. Ct. App. 1948). It has been observed that "what a jury may notice  though not precisely defined in the cases  falls considerably short of the principle of judicial notice," Tyree, Evidence, 6 Rutgers L.R. 290, 291 (1951); and see DeGray v. New York & N.J. Telephone Co., 68 N.J.L. 454 (Sup. Ct. 1902); State v. Elliott, 94 N.J.L. 76 (Sup. Ct. 1920); cf. Palestroni v. Jacobs, 8 N.J. Super. 438 (Law Div. 1950), reversed 10 N.J. Super. 266 (App. Div. 1950); Nusser v. United Parcel Service, 3 N.J. Super. 64, 69 (App. Div. 1949). The precise question stated does not require determination, for reasons to be stated presently.
Defendant contends it could not reasonably be required to cover the windows with the metal screens as that would curtail a means of escape in an emergency. There is no evidence on the point. It urges that the suggestion of increasing the height of its fence would be unreasonably burdensome in view of the length of line to be covered and the facility with which stones could be thrown at cars over or from points above the fence. This approach is persuasive, but one witness for defendant said the throw here involved was made from a point directly against the fence where it was only waist high to the thrower. The potentiality for a direct hit on target at an 18-foot distance under such conditions is apparent.
It is urged upon us that the weight of authority in this country is to bar liability of a carrier for willful or malicious *363 acts of third persons in comparable situations and we are referred to such cases as Woas v. St. Louis Transit Co., 198 Mo. 664, 96 S.W. 1017, 7 L.R.A., N.S., 231 (Sup. Ct. 1906); Schooler v. Louisville & I.R. Co., 259 Ky. 80, 82 S.W.2d 221 (Ct. App. 1935); Knoxville Cab Co. v. Miller 176 Tenn. 88, 138 S.W.2d 428 (Sup. Ct. 1940); Fewings v. Mendenhall, 88 Minn. 336, 93 N.W. 127, 60 L.R.A. 601 (Sup. Ct. 1903); Louisville Ry. Co. v. Logan, 306 Ky. 35, 206 S.W.2d 80 (Ct. App. 1947); Bosworth v. Union R. Co., 26 R.I. 309, 58 A. 982 (Sup. Ct. 1904). The general direction of these decisions is as represented by defendant. But none of them involved a prior condition of danger to passengers so pronounced and long-continued as the gauntlet through which the present defendant had been transporting passengers. In the Woas case, supra, the court observed that the "question (sic) did not indicate that such conduct was by any means general or of such frequency as to indicate that it would be repeated" (96 S.W., at page 1023), or that the motorman would anticipate that a missile would be thrown at him. (Id., 96 S.W., at page 1021). In the Knoxville Cab Co. case, supra, the declaration did not aver that the scene of the accident was a locality where repeated acts of similar nature had occurred (138 S.W.2d, at page 429). Several of the cases cited involve damage by strikers. These seem distinguishable on the basis of the comparatively temporary nature of the dangerous condition. In the Bosworth case, supra, a passenger was injured by a missile thrown by a striker. The motorman and the passenger knew there was a crowd of strikers ahead. The plaintiff could have alighted safely. The matter had come before the Supreme Court on demurrer to the declaration. The declaration alleged that the car was run into the midst of a mob who were threatening to do violence, to the company's knowledge. The demurrer was held rightly overruled. 25 R.I. 202, 55 A. 490 (Sup. Ct. 1903). In the second Bosworth case, that first cited, the court affirmed a judgment for defendant entered on a direction. It concluded that on the facts proven at the trial the presence of the crowd did not import knowledge of danger *364 to the motorman. The court held that the high degree of care ordinarily owing its passengers by a carrier does not extend to criminal acts of strangers and that the carrier is liable only "for all injuries resulting from the acts of strangers which are reasonably to be anticipated under the particular circumstances, and which ordinary care and prudence, had it been exercised, would have prevented." [26 R.I. 309, 58 A. 984] The court purported to follow the Fewings case, supra, which made the same distinction. But the defendant in the present case did not ask the trial court, and it does not ask this court, to declare the principle that a duty of only ordinary care applies in such a situation. It contends there was no duty of care at all on the part of the defendant in respect to acts of strangers from off its premises.
There is some authority to the effect that the duty of a high degree of care extends to acts of strangers who throw missiles, if the action could reasonably have been anticipated. See Irwin v. Louisville & N.R. Co., 161 Ala. 489, 50 So. 62 (Sup. Ct. 1909); Dufur v. Boston & M.R. Co., 75 Vt. 165, 53 A. 1068, 1070 (Sup. Ct. 1903); cf. Shepard v. Kansas City Public Service Co., 236 Mo. App. 1118, 162 S.W.2d 318, 321 (Ct. App. 1942). In the Dufur case, supra, where a passenger was struck by a bullet shot in target practice near a point where the defendant's cars were occasionally sidetracked, the court said that "if Allen was in the habit of using this space for target practice, and was so using it on this occasion, it is a question of fact whether the defendant's officers and agents, in the exercise of the high degree of care * * * ought not to have known of and guarded their passengers from injury." (53 A., at page 1070). In New Jersey we have only a passing dictum that an isolated instance of stone throwing into a car would not be imputable to a carrier as negligence. Scilimbracca v. Central R.R. Co. of New Jersey, 7 N.J. Misc. 635, 636 (Sup. Ct. 1929).
We conclude that there is no basis in our own authorities for establishing varying standards of care owing from a common carrier to its passengers, dependent upon whether the primary initiating cause of the injury is a stranger, or *365 is a person on the premises of the defendant and subject to its control. We conceive that the duty of a high degree of care is continuously owing, but that, depending upon the circumstances, it may or may not be found as a matter of law not to have been breached in a particular case. Our considered view is that upon the whole case here presented defendant has not shown that it is entitled as a matter of law to a judgment that it has fulfilled the high duty of care in carrying him safely which it owed plaintiff. Apart from the matter of protective devices, discussed hereinabove, there is an open question as to whether the failure of the motorman to warn his passengers of the danger, or to stop, alight and admonish the juvenile, when he saw him in an attitude plainly portending the projection of a dangerous missile at the vehicle in his charge, did not constitute a default in that duty imputable to defendant. We think the assessment of the reasonableness of his behavior and the consequent resolution of that question was for the jury, not the court. Skillen v. West Jersey & Seashore R.R. Co., supra (96 N.J.L., at page 494); Falzarano v. Delaware, L. & W.R.R. Co., 119 N.J.L. 76, 77, 82 (E. & A. 1937).
"Conceding that the driver was confronted with an unexpected crisis against which he was not called upon to exercise the same measured judgment as under other and more ordinary circumstances, nevertheless there was a duty upon him and whether he met or fell short of that duty was, we think, a jury question." Schreiber v. Public Service Co-ordinated Transport, 112 N.J.L. 199, 202 (E. & A. 1934).
Without implying a view as to circumstances other than the totality of everything here laid before the trial court, including the absence of protective devices and the conduct of the motorman, we believe, in the language of our former Supreme Court in Kinsey v. Hudson & Manhattan R.R. Co., supra (130 N.J.L., at page 288) that:
"* * * It was the peculiar province of the fact-finding tribunal to determine whether, in the special circumstances, defendant exercised the degree of care for plaintiff's safety laid upon it by the law, i.e. care commensurate with the risk of harm  such as one exercising a high degree of care, skill and diligence, directed to the passenger's *366 safety, and consistent with the nature of the carrier's undertaking and the practical operation of the vehicle or mode of conveyance, would under all the circumstances deem prudent to obviate the danger, known or reasonably to be anticipated. * * *"
In Rourke v. Hershock, supra (3 N.J., at pages 425, 426), the court considered whether negligence of a carrier might be imputed from a combination of a number of different circumstances. It said:
"* * * It may be that as to no one of these elements did the defendant violate a duty ordinarily owing to a disembarking passenger and yet that the combination of these elements together with an invitation to leave the bus under the named circumstances created an unusual condition from which an unfulfilled duty arose. * * *"
So, too, here, while the asserted negligence of the defendant with respect to any one of the several elements charged by the plaintiff here to constitute want of the required duty of care might not have been sufficient, in and of itself, we conclude that the combined factual background of this accident made for a jury question.
The point is also advanced that the plaintiff's loss was not the proximate result of any negligence by defendant, having regard to the intervening mischief by the boy. If, as we have held it was open to the jury to find, there was a realizable likelihood that the mischief would occur, and if it is that hazard which, as a matter of law, is the basis for a permissible jury finding as to defendant's negligence, the mischievous or intentional nature of the boy's act does not prevent defendant's negligence from being considered as the legal cause of the injury. Restatement of Torts, section 449.
Defendant contends that the charge of the court to the jury was erroneous in several respects. First, it is complained that the court instructed the jury that, "as counsel for the plaintiff suggests, the fences shown in the photographs or some of them, should have been higher." This language, taken out of context, would seem an improper conclusion by the court. But it was not objected to by defendant and is therefore not ground of error, R.R. 4:52-1, unless manifestly amounting to a denial of substantial justice to defendant. *367 See Dillman v. Mitchell, 13 N.J. 412, 417 (1953). Had objection here been made at the time of the charge the trial court would have had the opportunity to make its instruction in this respect comport with its references to the safety glass and to the screens, where it clearly indicated it was only paraphrasing the contentions of counsel for plaintiff. It may well have intended so to be understood. We see no basis here for excusing noncompliance with the rule cited. In respect to the court's reference to counsel's contentions as to defendant's duty with respect to screens and safety glass, we perceive no error. Indeed, the court's charge was, for reasons hereinbefore expressed, objectionably favorable to defendant in instructing the jury that there was no showing of departure by defendant from standards of practice for window glass or screens by transportation companies. If, as defendant also contends, there was conflict in the several portions of the charge referred to, that is not now objectionable, as part was favorable to defendant and part not objected to at the trial.
Defendant's final point, in relation to the verdict of the jury being contrary to the weight of the evidence, requires no discussion in view of what we have said above.
Judgment affirmed.